Terry L. **RICKERT** and
Robert L. Junkins

v.

**LATIMORE TOWNSHIP, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2008.

Decided Nov. 21, 2008.

Guy P. Beneventano, Harrisburg, for appellant.

Charles M. Suhr, Harrisburg, for appellee.

BEFORE: PELLEGRINI, Judge, and FRIEDMAN, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Latimore Township appeals an order of the Court of Common Pleas of Adams County (trial court) vacating the decision of the Latimore Township Board of Supervisors (Supervisors) to deny approval of a final land development plan submitted by Terry Rickert and Robert Junkins. The Township also appeals an order of the trial court ordering the Township to post a $100,000 bond as a condition of appeal to this Court. In this case, the principal issue we are asked to determine is whether a final land development plan, which is substantially similar to a deemed approved preliminary plan, must be approved notwithstanding any zoning concerns the Supervisors may have.

## BACKGROUND

Rickert and Junkins are the owners and developers of 45.008 acres of land located in Latimore Township along Old U.S. Route 15. The property was purchased from M. Everett Weiser and is shown as Lot 2 on Weiser's subdivision plan, which was approved by the Township in July 2001. Lot 2 is split zoned; part lies in the Commercial Industrial District (CI District) and part lies in the Agricultural Conservation District (AC District). Commercial uses cannot be conducted in the AC district. Rickert and Junkins own a utility contracting business called Mid–Atlantic Utilities, Inc. and seek to develop Lot 2 for use by their business.

In 2002, the Township amended its 1987 Zoning Ordinance by adding a new Agricultural–Conservation II District and reconfiguring the zoning districts in the Township to reduce the size of the CI District along the Old Route 15 corridor. *Rickert v. Latimore Township Board of Supervisors,* 869 A.2d 1086, 1088 (Pa. Cmwlth.2005). The 2002 ordinance removed Lot 2 from the CI district. Rickert and Junkins, along with Weiser, challenged the legality of the 2002 ordinance, and the ordinance was held to be void *ab initio. Id.*

While the litigation on the 2002 ordinance was pending, Rickert and Junkins submitted a preliminary land development plan for Lot 2, proposing to build "4 construction equipment and material storage buildings" on the north side of Old Route 15, which is in the CI District. The plan also proposed an office building for the south side of Old Route 15, which is partly in the CI District and partly in the AC District, along with parking, landscaping, and stormwater management facilities.

Reproduced Record at 73a (R.R. ____). The buildings on the north side of Old Route 15 were identified on the plan as three storage buildings and one service building.[1] Two driveways were proposed for the office building. One driveway in the CI District provided access to Old Route 15, and the other driveway, located in the AC District, provided access to Baltimore Road. The plan proposed to serve the structures on Lot 2 with on-site water and sewage disposal systems and to site a detention/infiltration basin on that part of Lot 2 located in the AC District.

The parties agreed to defer a review of the preliminary plan until the litigation on the 2002 ordinance concluded, which occurred in September 2005 when the Pennsylvania Supreme Court denied the Township's petition for allowance of appeal. In October 2005, the Supervisors voted to deny approval of the preliminary plan, but they did not issue a written decision. Believing that their preliminary plan was deemed approved, Rickert and Junkins filed a mandamus action against the Township. The trial court held that Section 508(3) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10508(3),[2] entitled Rickert and Junkins to a deemed approval of their preliminary plan and ordered the Supervisors to sign the preliminary plan.

On September 14, 2006, Rickert and Junkins filed a final land development plan that was essentially identical to the deemed approved preliminary plan.[3] The Planning Commission forwarded the final plan to other agencies for comment.

Township Engineer John Shambaugh, who is also the Zoning Officer, offered comments on the final land development plan in a letter to the Planning Commission. That letter contained a section entitled "Zoning Ordinance;" therein Shambaugh offered no criticisms of the proposed use of Lot 2 or the location of any of the structures proposed for the AC District.

The Adams County Office of Planning and Development (County) also provided comments on the final plan in a memorandum. The County made the following relevant comments:

1. Part III.1.A: We reiterate our comment from Part III.1.A of our December 30, 2003 review letter than [sic] contracting businesses are not specifically listed as permitted uses in the Commercial–Industrial (CI) District of the Latimore Township Zoning Ordinance.

\* \* \*

3. Part III.1.I: We again question, as we did in Part III.1.I of our December 30, 2003 review letter, whether infrastructure necessary to support a use in the CI District portion of the site may

---

1. The Zoning Ordinance lists "construction equipment and material storage, sales and supply" as a permitted use in the CI district. LATIMORE ZONING ORDINANCE (1987), § 432.A.12.

2. Section 508(3) of the MPC provides: Failure of the governing body or agency to render a decision and communicate it to the applicant within the time and in the manner required herein shall be deemed an approval of the application *in terms as presented* unless the applicant has agreed in writing to an extension of time or change in

the prescribed manner of presentation of communication of the decision, in which case, failure to meet the extended time or change in manner of presentation of communication shall have like effect. 53 P.S. § 10508(3) (emphasis added).

3. There were minor revisions, such as the depiction of loading and unloading zones and the labeling of the office building as "primary" and the other four buildings as "accessory." R.R. 87a.

be located in the Agricultural Conservation (AC) portion of the site.[4]

County Memo, November 16, 2006, at 2.

The Township Planning Commission met on December 26, 2006. Acting upon the concerns raised by the County, the Planning Commission recommended (1) that the Supervisors approve the final plan with the condition that Rickert and Junkins obtain zoning approvals of their proposed use, and (2) that the Supervisors disapprove the plan because certain commercial type uses were proposed for a portion of Lot 2 located in the AC District.

At its meeting on January 2, 2007, the Supervisors accepted the Planning Commission's recommendation. They voted to approve Rickert's and Junkins' final plan with two conditions: (1) that Rickert and Junkins obtain all necessary zoning approvals or variances for their proposed development; and (2) that Rickert and Junkins remove all commercial type development proposed for the portion of Lot 2 located in the AC District. Rickert and Junkins were given seven days to accept both conditions and advised that failure to accept the conditions would result in a denial of the final plan. When the Supervisors received no response, they gave Rickert and Junkins an extra day to respond. When there was still no response, the Supervisors issued a decision denying the final land development plan for Lot 2.

The Supervisors explained their denial in a written decision on January 16, 2007, in which they found that Rickert and Junkins

> failed to produce clear and convincing evidence that the Township granted [them] a preliminary opinion on zoning or has otherwise determined that the Property's proposed principal use (*i.e.*, office and storage space for a utility contracting business) complies with the Township's zoning ordinance.

Supervisors' Decision, January 16, 2007, Finding of Fact 46; R.R. 11a. The Supervisors found that the proposed use, *i.e.*, construction of "4 construction equipment and material storage buildings ... and a primary office building," was permitted under Section 432.A of the Zoning Ordi-

---

4. Parts III.1.A and III.1.I from the December 30, 2003, memo provide:

> III.1.A—Permitted Uses: The subject property is partially located in the Commercial Industrial (CI) District, and partially within the Agricultural Conservation (AC) District of the ... Zoning Ordinance. Even though the structural improvements are proposed in the CI portion of the property, the Plan, as submitted, does not demonstrate compliance with Section 432, the permitted uses section. We recommend that the Township require the applicant to specifically describe, on the Plan, the specific use being proposed. Describing a proposed use as an "office building" with associated "storage" and "service" buildings does not demonstrate compliance with this section, nor does it allow for a full assessment of compliance with other requirements of the Zoning Ordinance. As indicated above, we understand the applicant intends to operate a utility contracting business at this site.

> This use is not specifically authorized in Section 432. A similar use is "construction equipment and material storage, sales and supply," authorized in Section 432.A.12. The Township should assess whether Section 432 authorizes contracting businesses, or whether a special exception should be filed in accordance with Section 525.

> * * *

> III.1.I—Commercial Infrastructure Within AC District Portion of Site: The majority of the proposed development, including all structural development, would occur within the C–I Commercial Industrial District of the Township.... The Township Solicitor should be consulted for a formal determination to confirm that site work on the portion of the property in the AC District [access driveway, drainage swale, and detention pond] is permitted when accessory to a principal use in the CI District.

County Memorandum, December 30, 2003, at 3–4.

nance. However, these buildings would house a utility contracting business, which is not specifically permitted by the Ordinance.[5] Although the Supervisors recognized that a final plan similar to an approved preliminary plan must be approved, they stated their belief that as a matter of law all zoning requirements must be satisfied before a final plan can be approved. Because Rickert and Junkins did not obtain these zoning approvals, the Supervisors denied the final plan.[6]

Rickert and Junkins appealed, and the trial court sustained their appeal. In its opinion, the trial court held that the Supervisors erred in denying approval of the final land development plan. Finding the Supervisors' statements on whether the final plan was the same as the preliminary plan to be "somewhat nebulous," the trial court found that the two plans were substantially the same. Relying on *Annand v. Board of Supervisors of Franklin Township*, 160 Pa.Cmwlth. 93, 634 A.2d 1159 (1993), the trial court held that the Supervisors were required by the MPC to approve the final plan because it was substantially the same as the previously approved preliminary plan.

The trial court gave short shrift to the Supervisors' attempt to inject zoning issues into the planning process, suggesting

that it had been done to "avoid the ramifications of a deemed approved preliminary plan by raising zoning issues as a charade for disapproval of an identical final plan." Trial Court Opinion, December 7, 2007, at 9; R.R. 124a. Nevertheless, the trial court addressed the zoning issues raised by the Supervisors and found them not supported by substantial evidence. The trial court noted, in particular, that the Township's zoning officer did not identify any zoning issues when reviewing either the preliminary or the final plans. The trial court concluded that neither the MPC nor the Township's Subdivision and Land Development Ordinance[7] (SALDO) authorized the Supervisors' decision to conflate the zoning and planning regulatory regimes.

The Township appealed to this Court. On January 4, 2008, Rickert and Junkins filed a Petition to Post Bond, requesting that the Township be ordered to post a bond as a condition of pursuing its appeal. The trial court ordered the Township to post bond in the amount of $100,000, concluding that "the realistic [chance] of ultimate success on any of the issues is extremely slight" and the Township's contest was unreasonable. Trial Court Opinion, March 31, 2008, at 3; R.R. 135a.[8]

---

5. Construction equipment and material storage, sales and supply are uses permitted in the CI District, but these uses are not defined in the Ordinance.

6. At the Planning Commission meeting, Rickert was asked to identify the basis for his opinion that a utility contracting business is permitted in the CI District. Rickert replied that his research led them to conclude that it was a permitted use and, therefore, they did not seek express zoning approval.

7. LATIMORE TOWNSHIP, PA., THE LATIMORE TOWNSHIP SUBDIVISION AND LAND DEVELOPMENT ORDINANCE (1992).

8. In its PA. R.A.P. 1925(a) opinion, the trial court stated that its prior opinion adequately addressed the issues and reiterated that the real issue in this case is

> whether the Township can, on the basis of alleged zoning violations, withhold approval of a final plan which is substantially similar to a preliminary plan that had previously been "deemed approved." This Court concluded, under the precedent of *Annand*, that final approval must be granted by the Township.

1925(a) Opinion, March 31, 2008, at 2; R.R. 138a.

■ On appeal,[9] the Township raises three issues for our review.[10] First, the Township argues that the Supervisors correctly refused to approve a final plan that presented zoning issues. Second, the Township argues that the decision denying approval of Rickert's and Junkins' final plan is supported by substantial evidence because Rickert and Junkins were repeatedly and consistently informed that the proposed use for Lot 2 was not permitted within the CI district, yet they failed to act. Third, the Township argues that the trial court erred in requiring it to post bond because its appeal is not frivolous.

### DISAPPROVAL OF FINAL PLAN

■ We turn first to the Township's argument that the Supervisors' disapproval of the final plan was proper because Rickert and Junkins did not have zoning approval for their proposed use of their land. Rickert and Junkins counter that the MPC required the Supervisors to approve their final plan because it is substantially the same as their deemed approved preliminary plan. Land use regulation by zoning regulation, they contend, is separate and apart from planning regulation that is done under a SALDO.

The MPC provides that an applicant with approval of its preliminary plan is entitled to final approval. Section 508(4)(i) states, in relevant part, as follows:

> [W]hen a preliminary application has been duly approved, the applicant shall be entitled to final approval in accordance with the terms of the approved

preliminary application as hereinafter provided.

53 P.S. § 10508(4)(i) (emphasis added). This statutory provision formed the basis of this Court's decision in *Annand*, 160 Pa.Cmwlth. 93, 634 A.2d 1159, on which the trial court relied.

In *Annand*, a landowner with a deemed approved preliminary subdivision plan had his final plan rejected for the stated reason that it did not conform to the township's zoning ordinance. This Court held that zoning was not a basis for rejecting a final land development plan, explaining as follows:

> [T]he Township erred in rejecting the final plan after the preliminary plan had been deemed approved. To be approved, the final plan needed only to be the same plan as the deemed-approved preliminary plan with the additional engineering details required by the subdivision ordinance. The final plan met this requirement and it should have been approved by the Board of Supervisors.

*Annand*, 634 A.2d at 1161. However, this Court also rejected the notion that a deemed approval of the preliminary plan necessarily included approval of any zoning variances needed for implementation of the plan. We explained that a preliminary plan, whether approved by vote or by statutory deemer, relates only to subdivision and land development matters and not to zoning matters. Accordingly, approval of a final plan does not extend to any zoning

---

9. Where the trial court takes no additional evidence, our scope of review in a land use appeal is limited to determining whether the local governing body committed an error of law or an abuse of discretion. *Zajdel v. Board of Supervisors of Peters Township*, 925 A.2d 215, 218 n. 6 (Pa.Cmwlth.2007). A governing body abuses its discretion when its findings of

fact are not supported by substantial evidence. *Id.*

10. The Township identifies nine issues in its Statement of Questions Presented, but breaks the Argument section into three issues. Therefore, we will address its appeal using those three issues.

approvals needed to effect the development, such as the grant of a variance.

Notwithstanding the teachings of *Annand*, the Township argues that the Supervisors' actions in this case were appropriate and, indeed, dictated by *Graham v. Zoning Hearing Board of Upper Allen Township*, 520 Pa. 526, 555 A.2d 79 (1989). In *Graham*, a preliminary subdivision plan was deemed approved by the township board of commissioners. After appeal, the plan was approved by the zoning hearing board with ten conditions to ensure compliance with zoning requirements. At the time *Graham* was decided, Section 1007 of the MPC, 53 P.S. § 11007, required parties aggrieved by a land development decision to appeal to the zoning hearing board, as opposed to the trial court, which is the current procedure.[11] The Supreme Court held that in exercising its adjudicatory authority under Section 1007, a zoning hearing board could approve or disapprove a plan under appeal; it could not impose conditions. The Supreme Court held that only the township supervisors could impose conditions while the plan was before them for review. The Supreme Court explained its reasoning as follows:

> Once a preliminary application has been approved, *the application is entitled to final approval in accordance with the original preliminary application.* Thus, final approval of a subdivision plan is automatic unless the final plan is different from the preliminary plan. Significantly though, § 508(4) does permit the governing body to place conditions upon the approval of either the preliminary or final plan with the applicant's acceptance.

Since § 508 is specific in its requirement that defects in a plan be addressed by the governing body prior to either preliminary or final approval, it is clear that any question and restriction on the use or development of the property [must] be considered by the governing body at the fact-finding phase of the procedure. Any zoning problems must be considered at the planning stage for the purpose of approving or disapproving the plan. Otherwise, the governing body would not have the required information to make an informed decision. The fact that any changes in zoning laws will not affect a pending application supports the conclusion that zoning plays an important role in determining whether to approve or disapprove a plan. *Thus, § 508 makes it quite clear that zoning issues should be resolved no later than the acceptance of the final plan by the governing body.*

*Graham*, 520 Pa. at 532, 555 A.2d at 81–82 (emphasis added).

Relying on the final sentence of the above-quoted language, the Township argues that *Graham*, not *Annand*, governs the outcome here. It believes, apparently, that there is an inconsistency between the two holdings, but there is not.

First, the holding in *Graham* relates to what powers a zoning hearing board may exercise when it considers objections to a preliminary or final plan under a statutory appeal procedure that no longer exists. Its other holding is that a final plan similar to a preliminary plan must be approved, as was held in *Annand*. The Supreme Court states that zoning issues *should* be addressed by the governing body at either

---

11. Section 1007 of the MPC has been repealed; appeals of subdivision and land development decisions by a governing body are now taken to the court of common pleas.

Section 1001–A of the MPC, 53 P.S. § 11001–A, was added by the Act of December 21, 1988, P.L. 1329; *Folino v. Greenwich Township*, 862 A.2d 176, 180 (Pa.Cmwlth.2004).

the preliminary or final plan stage; however, this exhortation is not the holding.[12]

Second, the question of whether zoning approvals must be obtained as part of the land development approval is governed by the terms of the SALDO. For example, in *Borough of Jenkintown v. Board of Commissioners of Abington Township*, 858 A.2d 136 (Pa.Cmwlth.2004), this Court held that the board of commissioners erred in approving a final plan without including a condition for zoning approval because the SALDO required the zoning officer to approve the plan before the governing body could approve it. By contrast, it cannot be discerned from *Graham* whether the township's SALDO incorporated zoning into its terms.

■ Here, unlike the situation in *Borough of Jenkintown*, the Township's SALDO does *not* require an applicant to receive zoning approval before the Supervisors can grant final plan approval. The

Township's SALDO "suggests" that a developer should consult about the zoning requirements when preparing a preliminary plan.[13] This mildly worded advice in the SALDO did not authorize the Supervisors to weave zoning requirements into the final plan review process.[14] We hold that because the preliminary plan of Rickert and Junkins was approved, the Supervisors were required to approve the final plan regardless of any zoning issues that they, unlike the Zoning Officer, perceived.[15] The Supervisors' failure to do so constitutes an error of law.

## APPEAL BOND

In its next issue, the Township challenges the appeal bond that was ordered by the trial court as a condition of the Township being able to appeal to this Court. The trial court required a bond because it found the Township's appeal to be frivolous. The Township argues that

---

**12.** The Supreme Court suggested that if zoning is overlooked in the preliminary plan stage, it may be too late to bring it up for the first time at the final plan stage. *Graham,* 520 Pa. at 532, 555 A.2d at 81–82.

**13.** Section 301.4 of the SALDO states:

Before going ahead with the Preliminary Plan procedure or with steps to acquire land or subdivide, *it is suggested that the subdivider or developer be familiar with these regulations and should consult* with the Township Planning Commission about the following factors:

\* \* \*

h. requirements of the Township Zoning Ordinance.

LATIMORE TOWNSHIP SALDO, 1992, Art. III, § 301.4.h (emphasis added).

**14.** The Township asserts in its brief that "with respect to the Property's proposed principal use, it is clear that the Final Plan is substantially different from the Preliminary Plan." Township Brief at 26. This is not the case. The use listed on the deemed approved preliminary plan and the final plan is the same.

Further, as Rickert's and Junkins point out, they have always made clear that they intend to run a utility contracting business on the property.

**15.** Rickert and Junkins argue that the Township's appeal is moot because it did not appeal the trial court's determination that the Supervisors' unorthodox procedures for reviewing the final plan diverged from the requirements of the MPC and, thus, requires a deemed approval of the final plan. The Township responds that the trial court's "comments" on the Supervisors' procedure in this case are *dicta.* Because of our disposition of the case, we need not discuss this issue further.

We also need not address the Township's argument that substantial evidence supports the Supervisors' findings regarding zoning issues or Rickert's and Junkins' contention that the Zoning Officer determined that their proposed use complies with the Zoning Ordinance by not citing any zoning issues. Any issues pertaining to zoning must be addressed when Rickert and Junkins seek permits required by the Township's Zoning Ordinance.

the trial court's conclusion in this respect is at odds with the trial court's own observation that the Township's "issue currently before me is not entirely without some arguable legal merit." Trial Court opinion, December 7, 2007, at 15; R.R. 130a.[16] The Township further asserts that the trial court improperly prevented it from presenting evidence relevant to the appeal bond question.

 Rickert and Junkins requested an appeal bond under authority of Section 1003–A of the MPC, 53 P.S. § 11003–A,[17] which governs the procedures for bringing a "land use appeal" from a "governing body, board or agency" to a court of common pleas. 53 P.S. § 11003–A(b). It specifies such details as the contents of a land use appeal notice; when to file; when and how the record must be certified; and identifies the persons on whom the land use appeal must be served. 53 P.S. § 11003–A(a)–(c). Subsection (d) of Section 1003–A authorizes the court of common pleas, in limited circumstances, to grant a stay of the order of the "governing body, board or agency" and to order the posting of a bond as a condition of the land use appeal going forward in the court of common pleas. It was under authority of Section 1003–A(d) that the trial court imposed a $100,000 bond upon the Township as a condition of pursuing an appeal to Commonwealth Court. For the reasons explained below, Section 1003–A(d) did not provide this authority.

We begin with the language of Section 1003–A(d), which states as follows:

The filing of an appeal in court under this section shall not stay the action appealed from, but the appellants may petition the court having jurisdiction of land use appeals for a stay. If *the appellants are persons who are seeking to prevent a use or development of the land of another ... the landowner whose use or development is in question may petition the court to order the appellants to post bond as a condition to proceeding with the appeal.* After the petition for posting a bond is presented, the court shall hold a hearing to determine if the filing of the appeal is frivolous. At the hearing, evidence may be presented on the merits of the case. *It shall be the burden of the landowners to prove the appeal is frivolous.* After consideration of all evidence presented, if the court determines that the appeal is frivolous, it shall grant the petition for posting a bond. *The right to petition the court to order the appellants to post bond may be waived by the appellee, but such waiver may be revoked by him* if an appeal is taken from a final decision of the court. The question of the amount of the bond shall be within the sound discretion of the court. An order denying a petition for bond shall be interlocutory. An order directing the respondent to the petition for posting a bond to post a bond shall be interlocutory.

* * *

53 P.S. § 11003–A(d) (emphasis added). As noted, Subsection (d) concerns, as does all of Section 1003–A, a land use appeal while it is proceeding before a court of

16. The trial court made that comment while explaining its decision to deny Rickert's and Junkins' request for sanctions against the Township for acting in bad faith.

17. Section 1003–A was added by the Act of December 21, 1988, P.L. 1329. Section

1003–A replaced Section 1008, which also governed procedures for a land use appeal filed in a court of common pleas. ROBERT S. RYAN, PENNSYLVANIA ZONING LAW AND PRACTICE § 9.4.5 (1994).

common pleas.[18] The trial court needs a hearing to consider whether the land use appeal is frivolous because the court has not yet considered the merits of the governmental determination being brought to court.[19] Section 1003–A(d) does not address the next step of a land use appeal, *i.e.*, the appeal to Commonwealth Court, because Section 1003–A applies only to the trial court proceeding.

■ More importantly, Section 1003–A(d) provides protection only to landowners whose land use *approvals* are challenged in the trial court; it provides no protection to landowners who appeal a governmental determination denying their proposed land use. The "appellants" in this land use appeal were Rickert and Junkins. They were not "seeking to *prevent* the development of the land of another." Id. To the contrary, their appeal was filed so that they could pursue the development of their own land.[20] Simply, Section 1003–A(d) could not be invoked by Rickert and Junkins because they were the appellants before the trial court, not the appellees, and they challenged a denial, not a grant, of their final plan.[21]

18. The grant, or denial, of an appeal bond is an interlocutory order, suggesting that a person aggrieved by the bond should request to have it vacated by the court issuing the bond.

19. A government agency has been found to be a "person" within the meaning of Section 1003–A(d) of the MPC. *Lower Southampton Township v. Maloney*, 33 Pa.Cmwlth. 26, 380 A.2d 937 (1977) (upholding appeal bond where township filed land use appeal from a zoning board decision ordering the zoning officer to issue building permits for garden apartments because the landowners' application had been deemed approved due to the board of supervisors' failure to render a timely decision).

20. Although Section 1003–A(d) suggests that an appeal bond may be imposed at the conclusion of the land use appeal, it is not clear how this would be read in conjunction with

■ The Pennsylvania Rules of Appellate Procedure govern the question of whether a supersedeas and an appeal bond were appropriate in the Township's appeal of the trial court's order to this Court. Rule 1736 states, in relevant part, as follows:

(a) General rule. No security shall be required of:

* * *

(2) Any political subdivision or any officer thereof, acting in his official capacity, except in any case in which a common pleas court has affirmed an arbitration award in a grievance or similar personnel matter.

* * *

(b) Supersedeas automatic. Unless otherwise ordered pursuant to this chapter the taking of an appeal by any party specified in Subdivision (a) of this rule shall operate as a supersedeas in favor of such party.

Pa. R.A.P. 1736(a),(b). Accordingly, the Township's appeal automatically stayed

the Pennsylvania Rules of Appellate Procedure. It matters not here; the only party with the right to request a bond after a decision is made by the trial court is the "appellee" that has successfully defended the governing body's determination. In this case, "appellee" was the Township during the land use appeal before the trial court, and its decision was reversed.

21. In any case, it is difficult to agree with the trial court that the Township's appeal was frivolous. "An appeal is deemed to be frivolous when there is no likelihood of success and the continuation of the contest is unreasonable." *Donohue v. Arrowhead Lake Community Association*, 718 A.2d 904, 907 (Pa. Cmwlth.1998). The Township presented at least a colorable argument on its behalf.

the trial court's order, and it was automatically exempted from having to post an appeal bond.

 However, Rule 1736 is not absolute. A litigant may seek to have the automatic supersedeas vacated. Essentially, to set aside the automatic supersedeas, the litigant must make a showing that is the obverse of what is required under *Pennsylvania Public Utility Commission v. Process Gas Consumers Group*, 502 Pa. 545, 467 A.2d 805 (1983), where a litigant seeks to stay an order being appealed.[22] What is more, the appellee's burden

is not merely to demonstrate that the appellant has failed to meet the *Process Gas* standards to obtain a supersedeas in the first instance. Therefore, it is inappropriate to argue that the appellant may not be injured if the automatic supersedeas is vacated. Appellee must convince the court that appellee will be irreparably harmed if the automatic supersedeas is not vacated.

*Elizabeth Forward School District v. Pennsylvania Labor Relations Board*, 149 Pa.Cmwlth. 235, 613 A.2d 68, 70 (1992) (single judge opinion, Kelley, J.) (footnote omitted). Accordingly, this Court has explained:

It is well-established that in order to prevail on a motion to vacate an automatic supersedeas, the petitioner must establish: (1) that he is likely to prevail on the merits; (2) that without the re-

quested relief he will suffer irreparable injury; and (3) that the removal of the automatic supersedeas will not substantially harm other interested parties or adversely affect the public interest.

*Solano v. Pennsylvania Board of Probation and Parole*, 884 A.2d 943, 944 (Pa. Cmwlth.2005) (citation omitted).

Similarly, the litigant may seek to set aside the Rule 1736 exemption from security. Rule 1737 provides in relevant part:

The lower court or the appellate court, may at any time upon application of any party and after notice and opportunity for hearing, upon cause shown:

(1) *Require security of a party otherwise exempt* from the requirement of filing security, or increase, decrease or eliminate the amount of any security which has been or is to be filed.

PA. R.A.P. 1737 (emphasis added). The explanatory comment to Rule 1737 provides, in relevant part, that

[t]his Rule is revised to make clear that the discretion of the court under Chapter 17 extends to cases such as (1) requiring a normally exempt entity to file security (*e.g.*, a political subdivision whose resources are insufficient to justify the assumption underlying the usual rule exempting it from filing security).

Rule 1737 Explanatory Comment—1976.[23]

 The appeal bond imposed upon the Township must be set aside as proce-

---

**22.** The test for whether an applicant is entitled to a supersedeas pending appeal, which has been established by our Supreme Court, is as follows:

1. The petitioner makes a strong showing that [it] is likely to prevail on the merits.
2. The petitioner has shown that without the requested relief, [it] will suffer irreparable injury.
3. The issuance of a [supersedeas] will not substantially harm other interested parties in the proceedings.

4. The issuance of a stay will not adversely affect the public interest.
*Process Gas*, 502 Pa. at 552–553, 467 A.2d at 808–809 (citing *Virginia Petroleum Jobbers Association v. Federal Power Commission*, 259 F.2d 921 (D.C.Cir.1958)).

**23.** There are no cases from this Court or from our Supreme Court explaining when it is appropriate to require an appeal bond from a political subdivision. However, based on the explanatory comment to Rule 1737, it appears

durally flawed. The burden was on Rickert and Junkins to vacate the Township's automatic supersedeas and exemption from security established in Rule 1736. They did not do so. So long as the automatic supersedeas remained in effect, Rickert and Junkins did not have an approved final plan, and without one they could not proceed with their land development plans. Because they did not vacate the automatic supersedeas, Rickert and Junkins are solely responsible for any delay in the implementation of their project.[24] Further, the Township was exempt from an appeal bond, and Rickert and Junkins never sought to vacate the Township's exemption from having to post security in accordance with Rule 1737.

The trial court did not have authority under Section 1003–A(d) of the MPC to impose a bond, and it was not granted in accordance with the standards and procedures required by the Pennsylvania Rules of Appellate Procedure. It cannot, therefore, be sustained.

### CONCLUSION

Based on all of the foregoing, the trial court's December 7, 2007, order vacating the decision of the Supervisors and directing them to approve the final land development plan is affirmed. The trial court's March 31, 2008, order requiring the Township to post bond in the amount of $100,000 as a condition to proceeding with its appeal is reversed and the bond is ordered to be returned to the Township.

### ORDER

AND NOW, this 21st day of November, 2008, the order of the Court of Common

Pleas of Adams County dated December 7, 2007, vacating the decision of the Latimore Township Board of Supervisors and directing them to approve the final land development plan is AFFIRMED. The order of the Court of Common Pleas of Adams County dated March 31, 2008, ordering Latimore Township to post bond in the amount of $100,000 as a condition to proceeding with its appeal is REVERSED and the bond is ordered to be returned to Latimore Township.

---

that the appeal bond is designed for circumstances where there is a money judgment and the political subdivision's resources may not be sufficient to assure payment. This appeal does not involve a money judgment.

**24.** The trial court purported to set the bond at $100,000 to cover the costs of delaying construction by Rickert and Junkins.