81 A.3d 896

**PPM ATLANTIC RENEWABLE**

v.

**FAYETTE COUNTY ZONING HEARING BOARD, Neil Brown and Thomas J. Bozek.**

**Appeal of Thomas J. Bozek.**

Supreme Court of Pennsylvania.

Argued Oct. 17, 2012.

Decided Dec. 16, 2013.

Gary Nixon Altman, Esq., Uniontown, for Thomas J. Bozek.

Daniel W. Rullo, Esq., Barbera, Clapper, Beener, Rullo & Melvin, L.L.P., Somerset, Denise Renee Yarnoff, Esq., Riley, Riper, Hollin & Colagreco, P.C., Exton, for PPM Atlantic Renewable.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

### *OPINION*

Justice SAYLOR.[1]

This matter involves whether an objector in a land-use dispute must comply with a county court order to post bond as a condition of appealing to the Commonwealth Court, where the developer was the appellant in the county court.

PPM Atlantic Renewable ("PPM") unsuccessfully requested that the Fayette County Zoning Board grant it numerous special exceptions and variances for it to build 24 windmill turbines on leased land. Appellant Thomas J. Bozek ("Bozek") is an adjacent landowner who had spoken against the application before the Board. Bozek was given permission to

1. This case was reassigned to this author.

intervene in PPM's appeal to the Fayette County Court of Common Pleas (the "trial court").

The trial court ruled that the Board had erred and remanded with instructions. On remand, the Board granted several variances, denied others, denied special exception requests for eight windmills, and granted special exception requests for the remaining windmills, albeit subject to conditions. On PPM's second appeal, the trial court agreed with PPM's arguments and modified the zoning decision in a manner favorable to PPM via final order dated June 18, 2010.

Aware that Bozek was about to appeal to the Commonwealth Court, PPM made a motion in the trial court for an appeal bond. On July 16, 2010, Bozek filed his notice of appeal. On August 2, 2010, the trial court granted the motion and ordered Bozek to post a $250,000 bond as a condition of continuing with his appeal to the Commonwealth Court.

Thereafter, PPM moved in the Commonwealth Court to quash the merits appeal because Bozek failed to appeal the bond order or post bond. PPM argued that the trial court properly determined that Bozek's appeal falls within the parameters of Section 1003–A(d) of the Municipalities Planning Code ("MPC"), see 53 P.S. § 11003–A(d), because the appeal sought to prevent or limit the use or development of the land of another and was frivolous.[2]

2. Section 1003–A(d) states:

(d) The filing of an appeal in court under this section shall not stay the action appealed from, but the appellants may petition the court having jurisdiction of land use appeals for a stay. If the appellants are persons who are seeking to prevent a use or development of the land of another, whether or not a stay is sought by them, the landowner whose use or development is in question may petition the court to order the appellants to post bond as a condition to proceeding with the appeal. After the petition for posting a bond is presented, the court shall hold a hearing to determine if the filing of the appeal is frivolous. At the hearing, evidence may be presented on the merits of the case. It shall be the burden of the landowners to prove the appeal is frivolous. After consideration of all evidence presented, if the court determines that the appeal is frivolous, it shall grant the petition for posting a bond. *The right to petition the court to order the appellants to post bond may be waived by the appellee, but such waiver may be revoked by him if an appeal is taken from a final decision of the*

The motion was assigned to a single judge who granted it and quashed the appeal. Reconsideration was granted and the motion was assigned to a three-judge panel. While the motion to quash was pending before the panel, a different panel decided *Takacs v. Indian Lake Borough, Zoning Hearing Board*, 18 A.3d 354 (Pa.Cmwlth.2011).

In *Takacs*, the landowner was successful before the zoning board, and the objector appealed to the trial court, where she lost on the merits. The objector then appealed to the Commonwealth Court, whereupon the trial court, on the landowner's petition, ordered her to post bond as a condition of continuing with her appeal to the Commonwealth Court. The objector appealed both the merits decision of the trial court, and its bond order. However, she did not post bond. The *Takacs* court recognized that Section 1003–A(d)'s bond-posting language mostly refers to bonds that are imposed as a condition of continuing the appeal in the trial court and, as such, states that bond orders are interlocutory in nature. *Takacs* developed, however, that where the bond order is issued in connection with an appeal to the Commonwealth Court, it is "ancillary" to the merits appeal and, hence, is a final order that is appealable as of right. *See Takacs*, 18 A.3d at 357 (citing Pa.R.A.P. 1701(b)(1) (permitting a trial court, in the post-appeal timeframe, to take "action permitted or required by these rules or otherwise ancillary to the appeal")). The *Takacs* court then held that the bond order was proper and, accordingly, quashed the merits appeal because the objector had failed to supply the required bond. *See id.* at 360.

court. The question of the amount of the bond shall be within the sound discretion of the court. An order denying a petition for bond shall be interlocutory. An order directing the respondent to the petition for posting a bond to post a bond shall be interlocutory. If an appeal is taken by a respondent to the petition for posting a bond from an order of the court dismissing a land use appeal for refusal to post a bond, such responding party, upon motion of petitioner and, after hearing in the court having jurisdiction of land use appeals, shall be liable for all reasonable costs, expenses and attorney fees incurred by petitioner.

53 P.S. § 11003–A(d) (emphasis added).

After the *Takacs* decision was filed, the panel in the present matter granted PPM's motion to quash in a published decision. *See PPM Atlantic v. Fayette Cnty. Zoning Hearing Bd.*, 22 A.3d 253 (Pa.Cmwlth.2011). In summarizing the parties' contentions, the court first noted that PPM argued that the trial court had properly determined that the appeal falls within Section 1003–A(d) of the MPC because it seeks to limit the use or development of land of others and is frivolous, and that, under *Takacs*, the bond order was final and appealable. The court then recited that Bozek advanced several assertions in response, namely: (1) the bond order was void *ab initio* because PPM was the appellant before the trial court, and as such, under *Rickert v. Latimore Township*, 960 A.2d 912, 922 (Pa.Cmwlth.2008), PPM lacked the ability under the MPC to request an appeal bond in the first instance, and the trial court lacked authority to require one; (2) a jurisdictional tension exists between appellate procedural rule 1701—which generally states that a trial court may not proceed further in a case once an appeal is taken (except for certain housekeeping matters)—and Section 1003–A(d) of the MPC to the extent the latter provision is construed to allow a trial court to issue a bond order after an appeal to the Commonwealth Court has been filed; and (3) in all events, the *Takacs* holding should not be applied retroactively to the present controversy.

The Commonwealth Court rejected all of Bozek's arguments, addressing the second and third arguments first. In this regard, the court first quoted from *Takacs* for the position that the trial court's bond directive fell within the "ancillary order" provision of Pa.R.A.P. 1701(b)(1), thus making it final and appealable as of right. The court observed that, unlike in *Takacs*, Bozek did not appeal the bond order, thus precluding the court from considering its propriety. *See PPM Atlantic*, 22 A.3d at 259. Next, the court indicated that it could apply *Takacs'* holding retroactively, since *Takacs* did not announce a new rule of law, but interpreted a statute. *See id.* at 259–60. Finally, relative to Bozek's initial contention that the bond requirement was void *ab initio* because the trial court lacked the ability to impose it, the panel indicated that it was

unaware of any supporting authority for such a conclusion. *See id.* Accordingly, the court quashed Bozek's merits appeal due to his failure to post bond or appeal the bond order.

We allowed further appeal to this Court. *See PPM Atlantic Renewable v. Fayette Cnty. Zoning Bd.*, 615 Pa. 150, 41 A.3d 854 (2012) (*per curiam*).[3]

Bozek's advocacy focuses largely on his contentions that he was not required to appeal the bond order because it was an interlocutory order rather than a final one, *see* 53 P.S. § 11003–A(d) ("An order directing the respondent to the petition for posting a bond to post a bond shall be interlocutory."), and that the Commonwealth Court should not have applied the *Takacs* holding retroactively. Bozek does, however, raise a threshold issue that he had brought to the Commonwealth Court's attention, stating that, in accordance with *Rickert*, his appeal should not have been quashed because the bond order was void *ab initio*. *See* Brief for Appellant at 12–13.[4] For its part, PPM reasons that, based on *Takacs*, the bond order was immediately appealable since the trial court had entered its final decision on the merits and the bond order disposed of all remaining issues in the case. As for *Rickert*, PPM argues that the salient language in that case is *dicta*, and that the case is distinguishable in any event because there, the appellant before the Commonwealth Court posted the required bond and appealed the bond order. *See* Brief for Appellee at 19–21.

We will first address the preliminary question of whether the trial court had the authority to issue the bond order.[5]

3. One of the items enumerated in the standards governing allowance of appeal is consideration of whether an intermediate appellate court has erroneously quashed or dismissed an appeal. This supersedes the procedure described in *Vaccone v. Syken*, 587 Pa. 380, 384 n. 2, 899 A.2d 1103, 1106 n. 2 (2006). *See* Pa.R.A.P. 1114, Note; *accord Commonwealth v. Scarborough*, 619 Pa. 353, 359 n. 9, 64 A.3d 602, 605 n. 9 (2013).

4. Bozek preserved this issue at the trial court level by including it in his motion to strike PPM's bond petition.

5. Although the issue as such was not expressly referenced in the "Questions for Review" section of Bozek's petition for allowance of

Regardless of the order's status as final or interlocutory (and regardless of whether *Takacs* was capable of retroactive application), we agree with Bozek that the Commonwealth Court erred in quashing his merits appeal predicated on his failure to comply with such order, because it should have credited his argument that the order was void *ab initio*, and, as such, was a legal nullity. Our conclusion in this regard rests on two interrelated premises. First, Section 1003–A(d) of the MPC, *quoted in supra* note 2, primarily governs appeals to the common pleas court by an objector from a zoning board decision favorable to the developer. Second, even if the provision may be construed to authorize imposition of a bond in connection with an objector's further appeal to the Commonwealth Court—a question this Court has not yet addressed, *see* infra note 6—such authorization only exists where the objector was the party who originally appealed to the common pleas court.[6]

appeal, it is subsumed by a broad reading of the first question as stated, which asks whether Bozek was required to appeal the bond order under the circumstances. We note, moreover, that the body of Bozek's petition for allowance of appeal explicitly argues that, in line with *Rickert*, the trial court lacked authority under the MPC to issue the bond directive because PPM was the appellant before that court. *See* Petition for Allowance of Appeal, at 12–13. Finally, the question has been briefed on the merits by both parties in their presentations to this Court. *See* Brief for Appellant, at 12–13; Brief for Appellee, at 19–21. In this situation, we do not consider Bozek's arguably inartful framing of the first question for review to impede our ability to consider the threshold question of whether the trial court was authorized to issue the bond order in the first instance.

6. The dissent reasons that "[o]ne cannot waive a right that is nonexistent—hence, the authority to require a bond has to exist—it is a condition precedent to a waiver." Dissenting Opinion, at 145, 81 A.3d at 903. This is precisely our point: since PPM never had a statutory right to request an appeal bond prior to the trial court's final merits ruling, it could not have "waived" such a right for purposes of the subsequent appeal. To the extent the dissent states that Section 1003–A(d) "recognizes that one *can* petition for an appeal bond, even if one did not do so previously," *id.* (emphasis in original), we have no quarrel with this assertion in the context of an initial waiver. The statement is incomplete, however, as it does not purport to answer our essential position that waiver is impossible when the land developer had no right to request a bond before the common pleas court. Finally, regarding the dissent's contention pertaining to the rights of a land developer who was the appellee before the common pleas court and exercised its right

As to the first premise, we note, initially, that Section 1003–A principally addresses appeals to the common pleas court. It is located in Article X–A of the MPC, which sets forth the exclusive mode for securing review of decisions rendered pursuant to Article IX, *see* 53 P.S. § 11001–A, which, in turn, relates to decisions of "zoning hearing boards and other administrative agencies." MPC, Article IX, Title. Additionally, Section 1003–A's language supports such a conclusion, as, for example, subsection (b) mandates that the "governing body, board or agency whose decision or action has been appealed" must certify the record to the reviewing court for purposes of the appeal in question. 53 P.S. § 11003–A(b). This would make little sense in the context of an appeal to the Commonwealth Court, where the court of common pleas would be the entity certifying the record. As well, subsection (d) is explicit in providing that an order granting or denying a bond petition "shall be interlocutory," which, again, does not logically relate to an appeal from a final order of the common pleas court. Thus, the *Rickert* court provided an explanation that applies equally to the present controversy:

> Section 1003–A(d) provides protection only to landowners whose land use *approvals* are challenged *in the trial court;* it provides no protection to landowners who appeal a governmental determination denying their proposed land use. The "appellants" in this land use appeal were [the developers]. They were not "seeking to prevent the development of the land of another." [53 P.S. § 11003–A(d).] To the contrary, their appeal was filed so that they could pursue the development of their own land. Simply, Section 1003–A(d) could not be invoked by [the developers] because they

to request a bond, *see id.* (describing our interpretation as "counter-intuitive" relative to "an appellee [who] asked for a bond at the trial level against a frivolous challenge"), that scenario is not before the Court and, as such, we decline to address it. *See infra* note 7. In all events, this Court has never analyzed whether Section 1003–A(d) authorizes a land developer in that circumstance to petition the trial court for a bond in connection with an objector's appeal to the Commonwealth Court. This is a non-trivial issue, as the Legislature has clarified that all bond orders contemplated by Section 1003–A(d) are interlocutory. *See* 53 P.S. § 11003–A(d), *quoted in* supra note 2.

were the appellants before the trial court, not the appellees, and they challenged a denial, not a grant, of their final plan. *Rickert*, 960 A.2d at 922 (first emphasis original, citations and footnotes omitted).

We acknowledge there is one aspect of subsection (d) that may reasonably be viewed as referencing a bond connected with an appeal to the Commonwealth Court. Subsection (d) states that "[t]he right to petition the court to order the appellants to post bond may be waived by the appellee, but such waiver may be revoked by him if an appeal is taken from a final decision of the court." 53 P.S. § 11003–A(d). Even if one assumes, however, that this language affirmatively authorizes the trial court to require a bond relative to an appeal to the Commonwealth Court, it is couched in terms of an appellee's revocation of a prior waiver, and hence, it can only pertain where the same party is the appellee before both courts. The present case illustrates the point. The developer appealed to the common pleas court. As such, it was not in a position to seek an appeal bond in the first instance, and thus, it could not have "waived" its right to do so—meaning that there was no waiver to revoke. This circumstance materially distinguishes the present dispute from *Takacs*—a distinction that the Commonwealth Court overlooked when it applied the *Takacs* rule.[7]

For the reasons given, we conclude that the bond order was legally unauthorized and void *ab initio*.

For present purposes, it is immaterial whether a legal basis for the bond requirement exists extrinsic to Section 1003–A(d) of the MPC, as PPM concedes that the only matter remaining before the common pleas court at the time the bond order was entered was its motion for a bond pursuant to Section 1003–A(d). *See* Brief for Appellee at 24. The dissent overlooks this salient point in its reference to appellate rule 1701(b)(1), and appears to assume that trial courts may impose an appeal

7. We leave for another day the question of whether an appeal bond is available where the developer was the *appellee* before the trial court and did not waive its right to ask for a bond pursuant to Section 1003–A(d) in that forum. Since, as noted, PPM was the *appellant* in the trial court, Section 1003–A(d) simply does not apply to the present case.

bond absent statutory authorization simply because such bonds have been described as "ancillary" to an appeal for purposes that rule. *See* Dissenting Opinion, at 146, 81 A.3d at 903. Any such holding would be beyond the scope of the issues accepted for review, which pertain to the limits of the trial court's bond-imposition authority under Section 1003–A(d).

To the extent the dissent may be understood to suggest that Rule 1701(b)(1) itself supplies common pleas courts with broad powers to require the posting of appeal bonds, moreover, such a concept is highly suspect. Rule 1701 primarily divests such tribunals of their ability to proceed further in a case, and subsection (b)(1) makes an exception for certain matters that have been described as "housekeeping" in nature, *see, e.g., Old Forge Sch. Dist. v. Highmark, Inc.,* 592 Pa. 307, 315, 924 A.2d 1205, 1210 (2007) (quoting 20A PENNSYLVANIA APPELLATE PRACTICE § 1701:2 (West 2006)); *Savage v. Savage,* 736 A.2d 633, 649 (Pa.Super.1999), such as correcting formal errors in the record or causing the record to be transcribed.

Appeal bonds are materially different: they are in derogation of the right to appeal, as vividly illustrated by the present case in which a $250,000 bond was imposed upon a neighboring resident as a condition of exercising his right to appeal an adverse judgment. That right is constitutional in its dimension. *See* PA. CONST. art. V, § 9. *See generally Twelve Vein Coal Co. v. Dep't of Envtl. Res.,* 127 Pa.Cmwlth. 430, 436, 561 A.2d 1317, 1319 (1989) (indicating that a statutory requirement to pay into escrow an assessed penalty as a condition of exercising one's right to appeal violates Article V, Section 9, as well as the Open Courts/Remedies Clause of Article I, Section 11, in a circumstance where the appellant lacks the funds to pay). In this respect, imposition of a bond is in contrast to the more conventional scenario where security is posted in exchange for a stay or supersedeas. Under the latter procedure, made expressly available per our appellate rules, *see* Pa.R.A.P. 1731, 1733, a failure to post security has no effect on the right to appeal.

Appeal bonds as allowed under the MPC may have a salutary purpose in that they protect a developer's interests

during the pendency of an appeal where development is halted and the appeal is frivolous. *See, e.g.,* 53 P.S. § 10915.1 (governing appeals to the zoning board). In view of their ability to adversely affect substantive rights, however, the legislative grant of authority should not be construed more broadly than the statutory text will support, *accord Commonwealth v. N. Barsky & Sons,* 476 Pa. 13, 19, 381 A.2d 842, 844 (1978) (Manderino, J., concurring) ("Th[e Article V, Section 9] constitutional right to appeal is not conditioned, and the courts should not write any burdensome conditions into it."), nor should the ability to impose such bonds be assumed absent some affirmative legal authorization to that effect. We find it notable, then, that, apart from Section 1003–A(d) of the MPC, the dissent fails to reference any such authorization.

In summary, then, we hold that, in a proceeding where the land developer was the appellant before the common pleas court, Section 1003–A(d) of the MPC, 53 P.S. § 11003–A(d), does not authorize that court to require an objector to post bond in connection with the objector's appeal to the Commonwealth Court of a final order of the common pleas court. Additionally, to the extent this case involves any question regarding the scope of powers purportedly subsisting under appellate rule 1701(b)(1), we are not receptive to the position that that rule alone gives trial courts power or discretion to require the posting of bond as a precondition to an appeal where no other, external source of authorization for such a bond exists.

In light of the above, the Commonwealth Court should not have quashed the merits appeal based on Appellant's failure to post bond. Furthermore, in view of our disposition, we need not reach the question of whether the *Takacs* holding was properly applied retroactively.

Accordingly, we reverse the Commonwealth Court's order and remand for the intermediate court to resolve Appellant's appeal on the merits.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justices BAER, TODD, and McCAFFERY join the opinion.

Justice EAKIN files a dissenting opinion.

Justice EAKIN, dissenting.

Based on its interpretation of § 11003–A(d), the majority holds the order at issue here was void *ab initio*, and as such, was a legal nullity. In relevant part, § 11003–A(d) provides: "The right to petition the court to order the appellants to post bond may be waived by the appellee, but such waiver may be revoked by him if an appeal is taken from a final decision of the court." 53 P.S. § 11003–A(d). The majority states, even assuming "this language affirmatively authorizes the trial court to require a bond relative to an appeal to the Common-wealth Court, it is couched in terms of an appellee's revocation of a prior waiver, and hence, it can only pertain where the same party is the appellee before both courts." Majority Op., at 142, 81 A.3d at 901.

Respectfully, such an interpretation convolutes the purpose of allowing a bond in the first place. The statute does not talk at all about limiting the eligibility for a bond—it talks about revoking a prior waiver of a right, which acknowledges that such a right exists. One cannot waive a right that is nonexis-tent—hence, the authority to require a bond has to exist—it is a condition precedent to a waiver. This statute merely ac-knowledges that an eligible party may have waived the right to ask for a bond at the trial level, but provides that any such waiver may be revoked if there is an appeal beyond the trial court level—which means the bond may go forward. It does not say a bond is unavailable to an appellee unless that party was appellee below and previously did not ask for a bond. Section 11003–A(d) simply means what it says—a prior waiver, if one exists, does not preclude a subsequent request. Indeed, this recognizes one *can* petition for an appeal bond, even if one did not do so previously.

It is manifestly counter-intuitive to believe the statute re-quires a party to waive a right in one stage in order to

preserve it in another. Under this interpretation, if an appellee asked for a bond at the trial level against a frivolous challenge, and prevails, the appellee is to be denied the right to ask for a bond on appeal—yet a concurrent appellee who waived a bond at trial may now obtain it on appeal. This is not the statute's purpose or meaning. Again, it is a statute about the scope of a waiver, not about eligibility.

Pennsylvania Rule of Appellate Procedure 1701(b)(1) permits a lower court to take certain limited actions after an appeal has been filed, including ancillary actions such as the issuance of a bond order as a condition to appeal. When the bond order was issued, appellant had three options: challenge it, comply with it, or ignore it. He chose the latter, at his peril. The bond was properly made a requirement of pursuing the appeal. The Commonwealth Court, therefore, properly held his failure to meet that requirement doomed the appeal—if there is an order making a bond a prerequisite to further proceedings, failure to post the bond ends the matter. If the proceeding is an appeal of the final disposition, one must obey, or appeal the bond order. This is not a new legal concept. Thus, I would find the bond order was proper, and appellant's failure to challenge or comply with it was fatal.