975 A.2d 1193 (2009)
In re Appeal of DEEMED APPROVED CONDITIONAL USE
Appeal of Borough of Schuylkill Haven
Richard Sterner, Paul Becker and Deborah Becker
v.
Schuylkill Haven Borough
Appeal of Paul Becker and Deborah Becker
In re Appeal of Deemed Approved Conditional Use
Appeal of Richard Sterner.
No. 1192 C.D. 2008, No. 1238 C.D. 2008, No. 1301 C.D. 2008.
Commonwealth Court of Pennsylvania.
Submitted on Briefs February 27, 2009.
Decided May 19, 2009.
*1194 Mark Semanchik, Frackville, for designated appellant, Borough of Schuylkill Haven.
Robert M. Reedy, Schuylkill Haven, for designated appellant, Richard Sterner.
*1195 James G. Caravan, Schuylkill Haven, for appellees, Paul Becker and Deborah Becker.
BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and FRIEDMAN, Senior Judge.
OPINION BY Judge McGINLEY.
Richard Sterner (Sterner) and the Borough of Schuylkill Haven (Borough) appeal from an order of the Court of Common Pleas of Schuylkill County (common pleas court) that denied Sterner's notice of conditional use appeal and petition for review.[1] Also, before this Court is the cross-appeal of Paul Becker and Deborah Becker (the Beckers) from an order of the common pleas court that overruled the Beckers' preliminary objections to the conditional use appeal and petition for review.
On February 8, 2008, Sterner filed a notice of conditional use appeal and petition for review and alleged:
....
4. [The Beckers] propose building storage sheds in the Schuylkill Haven Borough flood plain, in the area of Saint Charles Street and West Liberty Street [the Property]. (emphasis added).
....
6. Appellant's [Sterner's] property is located in the flood plain of Schuylkill Haven Borough....
....
8. The area of Saint Charles Street and West Liberty Street ... [the Property] is in an identified flood plain.
9. To build storage sheds in the flood plain, [the Beckers are] required to receive approval of the ... Borough Council under "Conditional use" provisions of the various zoning and building codes of the Borough. (Copies of "Borough of Schuylkill Haven Zoning Ordinance" and "Schuylkill Haven Code" are attached and incorporated herein by reference and marked as Exhibit A and Exhibit B, respectively). (emphasis added)
10. On October 9, 2007 the first of a two-session Conditional Use hearing was held before ... Borough Council. (Transcripts attached and incorporated herein by reference and marked as Exhibit C).
11. On October 16, 2007 the second and final Conditional Use hearing was held before ... Borough Council. (Transcripts attached and incorporated herein by reference and marked as Exhibit D).
....
15. On December 19, 2007 Borough Solicitor, Mark Semanchik, Esquire announced at the regular council meeting that Borough Council had voted not to grant the conditional approval for storage sheds in the flood zone. (emphasis added).
16. The Borough despite their ruling on December 19, 2007, failed to comply with the Pennsylvania Municipalities Planning Code, 53 P.S. § 10913.2 and issue a written ruling based on its findings.[[2]] (emphasis added).

*1196 17. On January 31, 2008 and February 7, 2008 a notice by Paul Becker and Deborah Becker [the Beckers] was published in the Pottsville Republican & Herald, that their application for approval of a Land Development Plan is "deemed approved" .... (emphasis added).
18. Appellant [Sterner] and his property would be adversely, directly, immediately and substantially affected by the "deemed approved", "conditional use" that will allow the building of storage sheds in the flood plain where Appellant's [Sterner's] home is also located. Whereas ... [i]t is respectively requested that this Honorable Court review the evidence before it (exhibits A-B-C-D-E-F) and dissolve and reverse the "deemed approved" status.
Notice of Conditional Use Appeal and Petition for Review, February 8, 2008, Paragraphs 4, 6, 8-11, and 15-18 at 1-4; Exhibit A.[3]
On March 13, 2008, the Beckers preliminarily objected and asserted:
....
2. On or about February 8, 2008, Appellant [Sterner] filed an appeal from the said deemed approval with this Court.
3. On or about February 19, 2008, the Borough filed a Notice of Intervention in said appeal.[[4]]
4. On or about February 25, 2008, [Paul] Becker [the Beckers] filed a Notice of Intervention in the said appeal.
....
7. No separate appeal was filed within the applicable thirty day time limit from the date of the deemed approval by the Borough.
8. There is no challenge before this Court to the propriety of the deemed approval.
9. By virtue of the deemed approval, the Borough is deemed to have approved the application of [the Beckers] for a conditional use. (emphasis added).
10. The Borough may not appeal (or be a party to an appeal) from its own decision approving the application. (emphasis added).
....
13. The Notice contains no specific grounds for the appeal; rather there is only a general request that the Court conduct a de novo review of the transcript of the prior proceedings, and reverse the "deemed approved" status.
14. The Notice thus fails to conform with the requirements of Pa. R.A.P. No. 1513; Sch. R.C.P. No. 14(I)(A)(2)(f); and Section 1003-A of the Pennsylvania Municipalities Planning Code (53 P.S. § 11003-A).
*1197 Preliminary Objections, March 18, 2008, Paragraphs 2-10 and 13-14 at 1-2.
On April 24, 2008, the common pleas court overruled the Beckers' preliminary objections.
At the October 9, 2007, hearing, Paul Becker testified that he proposed to place self-storage sheds on the Property which are "all metal, and ... sit on 4-inch concrete slabs [that are] bolted down. They're basically for people who don't have enough room at their home ... they rent them to put the excess ... [i]t could be furniture; it could be a car ... it could be anything of that nature." Hearing Transcript, October 9, 2007, (H.T. 10/09/07) at 12; Exhibit C at 12. There would be 92 storage sheds and the size of the storage sheds would range from "10-by-10s, 10-by-20s, 5-by-5s for someone who needs just a smaller one." H.T. 10/09/07 at 12; Exhibit C at 12. The storage sheds would be enclosed by a fence and "[t]here's an electronic gate that you would use to gain access to get into it." H.T. 10/09/07 at 17; Exhibit C at 17. Pursuant to an engineering study the Beckers planned to raise the current level of the ground to five feet, eleven inches "which is a foot and a half above the flood state." H.T. 10/09/07 at 20; Exhibit C at 20. The storage sheds would not have a negative effect on the surrounding properties that are located in the residential area and industrial area. H.T. 10/09/07 at 38-39; Exhibit C at 38-39. Finally, even in the event of "a super extraordinary flood", the storage sheds would not move from the concrete pads and move downstream. H.T. 10/09/07 at 48; Exhibit C at 48.
Edwin Nordahl (Nordahl), a civil engineer for Ludgate Engineering, testified:
Well, I did an approximate analysis, I guess you'd say, to get an idea of what the rise might be from filling in that area where the storage sheds are going. And I looked at ... the percentage of that area that's filling in the floodplain; and it was around 3 percent. And then based on that percentage, extrapolated a value for what I thought would be the rise of water surface, which in my reportI sent this report out on July 20th, 2007. I said it should be less than a couple inches, probably closer to zero inches. That was my determination from the information I had. (emphasis added).
H.T. 10/03/07 at 87; Exhibit C at 87. Finally, Nordahl concluded:
Well, if you look at where the storage fill is, the fill for the storage unit is, it's more or less it's parallel to the flow of the river. And right downstream, like downstream of this fill area is this sewage treatment plant. So the sewage treatment plant, if you look at the footprint of that and the blockage that it creates there, it really, it's actually right downstream where the fill is so that the blockage essentially is already there in the direction of the flow, so to speak. So that's another reason that ... I initially thought it wasn't that significant, the fill, when I first talked to him, to the client about it. But I know they wanted a hard firm number, which like I say in this report, that's as good as I can do.... You got to keep in mind, too, that this fill is in the floodplain, not the floodway.
H.T. 10/09/07 at 89; Exhibit C at 89.
At the October 16, 2007, hearing, Clayton Bubeck (Bubeck), Borough engineer, testified that the Borough reviewed Nordahl's information:

In general, in review of Mr. Nordahl's information, we felt that the flood, floodplain analysis, that it was inappropriate to analyze the impact of the proposed building fill based upon the 1350-foot-wide overbank floodplain of the *1198 FEMA cross section B with the proposed fill as the only encroachment.... (emphasis added).

We also disagreed with the Applicant [the Beckers] engineer's opinion that it was unrealistic to attempt to qualify this situation with any greater precision than zero to 2 inches. Utilizing the HEC-RAS program is normally consistently used for the evaluation of FEMA, for municipal and DEP reviews. (emphasis added).
And third ... the Applicant's [the Beckers] engineer had indicated that the removal of material from within the floodway should offset the placement of fill in the overbank for the building project.
Hearing Transcript, October 16, 2007, (H.T.10/16/07) at 15-16; Exhibit D at 15-16.
Michael Paulin (Paulin), Code Enforcement Officer, testified that pursuant to Section 118-26(A.2) of the Schuylkill Haven Code (Code) the fill shall "consist of soil or small rock materials only ... [s]anitary landfill [shall] not be permitted." H.T. 10/16/07 at 60; Exhibit D at 60. Paulin stated some of the pictures taken of the fill on the Property show "some big rocks in there." (emphasis added). H.T. 10/16/07 at 62: Exhibit D at 62. However, Paulin continued that "I'm not clear that that's all fill though ... I don't know what was there prior to ... I can't testify that this is all the fill that he brought in or whatever." H.T 10/16/07 at 63; Exhibit D at 63.
Sterner testified that the fill he observed on the Property was "[b]usted up curbing, busted up sidewalks, all kinds of debris." H.T. 10/16/07 at 88; Exhibit D at 88. The Property "prior to this, it had weeds about 5 feet high ... [b]ut now it looks like this before the weeds were cut down." H.T. 10/16/07 at 89; Exhibit D at 89.
The common pleas court denied the notice of conditional use appeal and concluded:
None of the parties here made a request for the opportunity to submit additional evidence and all seemed resigned that the Court review the record made below. So the Court shall now proceed as required by law to make its findings based on the record below, that record being the testimony and the exhibits admitted at the two hearings.
The Court finds the following to be supported by the credible evidence of record. The effect of Beckers building the proposed storage sheds in the area where they intend to construct them would have a negligible effect upon the floodplain if any effect at all. The Beckers have shown this through the evidence inclusive of the testimony and opinions of the expert witness Mr. Nordahl establishing that the construction would have a negligible effect or no effect at all adverse to the floodplain. (emphasis added).
Opinion of the Common Pleas Court, June 5, 2008, at 3-4.

I. Whether The Common Pleas Court Abused Its Discretion When It Overruled The Beckers' Preliminary Objections (The Beckers' Cross-Appeal)?

A. The Beckers' Preliminary Objection To The Borough's Intervention In The Notice Of Conditional Use Appeal.

Initially, the Beckers contend[5] that the Borough's intervention in the conditional *1199 use appeal should be stricken because the governing body of a municipality lacks standing to appeal from a deemed approval of a conditional use application.[6]
In Board of Supervisors of East Rockhill Township v. Mager, 855 A.2d 917 (Pa. Cmwlth.2004), this Court addressed the issue of whether a municipality that acts in a quasi-judicial capacity may appeal a conditional use application. This Court stated:
... In Gryshuk [v. Kolb, 685 A.2d 629 (Pa.Cmwlth.1996)], we recognized that in deemed approval cases, the municipality's decision, i.e., approval, has already been made for it by operation of law as a result of the municipality's own delay. See also Borough of Monroeville v. Foltz, 5 Pa.Cmwlth. 304, 290 A.2d 269 (1972) (the term "deemed approval" means that the municipality has ruled in the applicant's favor). Consequently, absent an appeal by a party actually opposing the application, the municipality cannot appeal from its own decision approving the application. (emphasis added).
Id. at 920.
Here the record established that Sterner filed his notice of conditional use appeal on February 8, 2008, and the Borough filed a notice of intervention on February 19, 2008. Because Sterner was the party that actually opposed the conditional use permit of the Beckers, the Borough was a proper party to the appeal. East Rockhill. The common pleas court properly overruled the Beckers' preliminary objections to the Borough's intervention.

B. The Beckers' Preliminary Objections to Sterner's Conditional Use Appeal
The Beckers next contend that Sterner failed to plead specific allegations in his conditional use appeal as to why the Beckers were not entitled to a permit to build storage units in a floodplain. Specifically, the Beckers assert that the eighteen paragraphs of allegations in Sterner's notice of conditional use appeal addressed only procedural matters that occurred during the hearing, and not why the deemed approval was improper.
The trial court reviewed Sterner's notice of conditional use appeal and concluded that Sterner's notice of appeal and petition for review incorporated his brief before the local agency which sufficiently set forth his specific grounds for the conditional use appeal. See Order of the Court of Common Pleas, April 24, 2008, at 2-3. In fact, a review of the record clearly established Sterner believed the proposed storage sheds would increase the likelihood of flooding to Sterner's property. Again the common pleas trial court properly overruled the Beckers' preliminary objections.

II. Whether The Trial Court Erred When It Determined That The Beckers Were Entitled To A Conditional Use Permit (Sterner's Appeal)?
Sterner contends[7] that the Beckers were not entitled to a conditional use *1200 permit because 1) they failed to acquire the necessary variances and 2) the proposed use was not a permitted use and was specifically prohibited in the 100-year floodplain.
In City Planning Commission of the City of Greensburg v. Threshold, Inc., 12 Pa.Cmwlth. 104, 315 A.2d 311, 313 (1974), this Court enunciated the burden necessary to qualify for a conditional use:
In applying for a conditional use, we believe that the applicant carries the burden of proving that his proposed use is one permitted as a conditional use by the applicable zoning ordinance and that he has complied with all the reasonable standards established by that ordinance. When such proofs have been established, however, the burden of going forward with the evidence and establishing that the proposed conditional use does not meet the standards of the ordinance shifts to the objecting party. (emphasis added).
Section 202 of the Schuylkill Haven Zoning Ordinance (Ordinance) defines the term "conditional uses" as "[a] use which is allowed or denied by the Borough Council within the provisions of Article I, after review by the Planning Commission." Exhibit A.

A. Whether The Proposed Use Was Permitted By The Ordinance In A Flood Prone Area?

Section 513 (Flood-Prone Area) of the Ordinance provides:
A. Purposes. To prevent the loss of life and destruction and damage of property; to avoid government expenditure for flood protection, rescues and reconstruction; to avoid public health and safety hazards; to avoid increases in flood levels and velocities; and to reduce the numbers of persons unknowingly investing in land or new structures that are prone to flooding. (emphasis added).
....
C. Description of Floodplain Areas. For the purposes of this Article, the "100-Year Floodplain" shall be those areas identified as "Special Flood Hazard Areas Inundated by 100-Year Flood" or such similar designation on the latest version of the official Flood Insurance Study for the Borough as issued by the U.S. Department of Housing and Urban Development or its successor agency which shall hereafter be referred to as the "Federal Floodplain Study."
Exhibit A.
Section 513 D(3) of the Ordinance provides:
Permitted uses in the 100-year floodplain... shall be limited to the following uses, provided that such uses are permitted by the underlying zoning district and will meet the other requirements of this Section ... [n]ature preserves... [p]lant nurseries ... [o]ut door [sic] recreation uses ... [g]olf courses ... [p]arking areas ... [y]ard setback areas ... [c]rop farming ... [b]elow ground and elevated utilities,... [b]ridges, culverts and similar structures that the applicant proves to the written satisfaction of the Borough Engineer ....
Exhibit A.
Section 513 D(1) of the Ordinance prohibits the following:
a. Construction of new buildings, (emphasis added).

*1201 b. Construction, development, placement or extension of a structure that could inhibit the passage of 100-Year floodwater or that could reduce the water carrying capacity of a 100-Year Flood Plain,
c. Filling in or grading within the 100-year floodplain, other than minor finished grading or excavation that the applicant proves to the written satisfaction of the Borough Engineer will not result in a net reduction in the water carrying capacity of the floodplain,
d. Redirection of a perennial waterway, other than stream improvements authorized by the PA. Fish and Boat Commission that are intended solely to improve aquatic habitats....
Exhibit A.
Here, the proposed construction of the storage sheds in a flood prone zone is prohibited, further, storage sheds are not a permitted use in the floodplain under the Ordinance.

B. Whether All Necessary Variances Were Satisfied Prior To A Conditional Use Hearing?

Section 117 (Conditional Use Process) of the Ordinance provides:
....
B. Procedure
1. A conditional use submission shall not be considered officially accepted for review until any needed zoning variances that are directly relevant to the site layout and nature of the use is granted. The applicant may request an informal review by the Planning Commission of a site plan prior to requesting variances or special exception. (emphasis added). Exhibit A.
Section 202 of the Ordinance also defines the term "variance as the granting of specific permission by the Zoning Hearing Board to use, construct, expand or after land or structures in such a way that compliance is not required with a specific requirement of the Zoning Ordinance ... [a]ny variance shall only be granted within the limitations of the PA. Municipalities Planning Code." (emphasis added).
Exhibit A.
In the present controversy, the record indicates that the Beckers sought three variances to build their storage sheds which were granted by the Zoning Hearing Board of the Borough of Schuylkill Haven (Zoning Hearing Board):
....
5. In order for applicant to submit a final site plan as part of the conditional use application process he is requesting several variances as follows:
A. Reduction of two front set back limits from 40 feet to 20 feet;
B. Reduction of two rear set back limits from 50 feet to 20 feet;
C. Increase in lot coverage area from 40% to 44%.
....
9. The three variances requested will not alter the essential character of the neighborhood or the district nor impair the use or development of adjacent property or be detrimental to the public welfare. The three variances requested represent the minimum variance that will afford relief and represent the least modification possible.
Zoning Hearing Board's Decision, August 2, 2006, Findings of Fact Nos. 5 and 9 at 1.
Sterner attempted to establish before the Borough Council that because the Beckers failed to obtain further variances from the Zoning Hearing Board they were not entitled to a conditional use permit. *1202 However, Borough Council precluded Sterner's counsel from pursuing this line of questioning.[8]
Specifically, Sterner asserts that the Beckers never applied for or received the following: 1) a variance to increase the lot coverage from forty-four percent to sixty-five percent (H.T. 10/9/07 at 50; Exhibit C at 50); 2) a variance to build in a floodplain (H.T. 10/16/07, Objector's Exhibit 6(b) at 1; Exhibit D); 3) a variance to place fill in a floodplain (H.T. 10/9/07 at 54-55; Exhibit C at 54-55 and H.T. 10/16/07, Objector's Exhibit 6(c) at 1; Exhibit D); 4) a variance to eliminate handicap parking (H.T. 10/16/07, Objector's Exhibit 6(f) at 2; Exhibit D); 5) a variance to not have fill extending fifteen feet beyond the storage units from all points (H.T. 10/9/07 at 65 and 71 and Objector's Exhibit 6(g) at 2; Exhibit D); 6) a variance to have the fill composed of anything other than "soil or small rock material" (H.T. 10/16/07 at 60-62 and 88-89 and Objector's Exhibit 6(h) at 2; Exhibit D); and 7) a variance to place fill on an existing grade that would exceed three feet above the nearest road (H.T. 10/16/07 at 64 and 66 and Objector's Exhibit 6(i) at 2; Exhibit D).
Here, pursuant to Section 117(B) of the Ordinance, the Beckers were not entitled to a conditional use permit to construct storage sheds because they failed to obtain the necessary variances.[9]
Accordingly, this Court affirms the common pleas court's decision to overrule the preliminary objections of the Beckers and reverses the Court's decision to deny Sterner's and the Borough's conditional use appeal and petition for review.[10]

ORDER
AND NOW, this 19th day of May, 2009, the order of the Court of Common Pleas of Schuylkill County in the above captioned matter is affirmed as to the overruling of the Beckers' preliminary objections and reversed as to the denial of Sterner's and *1203 the Borough's conditional use appeal and petition for review.
NOTES
[1] The Borough's request to intervene in Sterner's conditional use appeal and petition to review was granted by the common pleas court.
[2] Section 908 of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. § 10908 provides:

(9) The board or the hearing officer, as the case may be, shall render a written decision or, when no decision is called for, make written findings on the application within 45 days after the last hearing before the board or hearing officer.... Where the board fails to render the decision within the period required by this subsection ... the decision shall be deemed to have been rendered in favor of the applicant.... When a decision has been rendered in favor of the applicant because of the failure of the board to ... render a decision as hereinabove provided, the board shall give public notice of said decision within ten days from the last date it could have met to render a decision in the same manner as provided in subsection (1) of this section. If the board shall fail to provide such notice, the applicant may do so. Nothing in this subsection shall prejudice the right of any party opposing the application to appeal the decision to a court of competent jurisdiction. (emphasis added).
[3] The conditional use and petition for review are also located in the Reproduced Record (R.R.) at 5a-8a.
[4] The Borough asserted that "the Borough is the municipality directly involved in the decision from which this appeal has been filed, and pursuant to Sch. R.C.P. 14(B) and the Pa. Municipalities Planning Code, Section 1004-A, intervenes in this action." Notice of Intervention, February 19, 2007, at 1; R.R. at 14a.
[5] "Preliminary objections may be sustained only if the law says with certainty that no recovery is possible." Koken v. Steinberg, 825 A.2d 723, 726 (Pa.Cmwlth.2003). "To sustain preliminary objections a complaint must be clearly insufficient to establish any right to relief, and preliminary objections will not be sustained if any theory of law will support a claim." Id. Any doubt should be resolved against the objecting party. Id.
[6] Pa. R.A.P. 501 (Any Aggrieved Party May Appeal) provides that "[e]xcept where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order... may appeal therefrom." Although the Beckers were successful before the common pleas court and not aggrieved, this Court will consider their arguments as additional reasons why the common pleas court's order should be sustained.
[7] This Court's review where the trial court "takes no additional evidence, but makes it [sic] own findings based on the record before the board" is whether the trial court abused its discretion or committed an error of law. Eastern Consolidation v. Board of Commissioners of Hampden Township, 701 A.2d 621, 623 (Pa.Cmwlth. 1997). This Court will only find an abuse of discretion where the trial court's findings are not supported by substantial evidence. Id.
[8] Mr. Robert Reedy (Reedy), Sterner's attorney, to Borough Council:

Reedy: ... I'm arguing with the ruling because I'm looking at the law, which is Section 117, that says that you cannot consider a conditional use until all needed zoning ordinances are taken care of. And if they're not taken care of, if you don't have the variances, then the rule still applies.
....
Borough Council: But Mr. Reedy, anything with regard to a zoning variance, Council doesn't act on zoning variances.... The Zoning Hearing Board acts on zoning variances.
H.T. 10/16/07 at 38 and 41; Exhibit D at 38 and 41.
[9] The present matter is distinguishable from this Court's holding in Rickert v. Latimore Township, 960 A.2d 912 (Pa.Cmwlth.2008). In Rickert, Latimore Township's Subdivision and Land Development Ordinance (SALDO) did not require "an applicant to receive zoning approval before the [Latimore Township Board of] Supervisors can grant final [land development] plan approval." Id. at 920. Here, pursuant to the Township's Ordinance, the Beckers were required to obtain the necessary zoning variances before they could seek a conditional use permit.
[10] The Borough also raises the following argument on its appeal (The Borough Appeal):

1. Did the lower court abuse its discretion or commit an error of law in finding that the landowners sustained their burden of proving the relief requested in the Conditional Use Application to construct storage sheds, and disregarded the substantial evidence of record in finding that the requested relief would not be adverse to the health, safety, and welfare of the community?
The Borough's Statement of Question Involved at 2. This Court need not address this argument based upon the acceptance of Sterner's arguments.