| | |
|---|---|
| Township of Derry | : |
| | : |
| v. | : No. 663 C.D. 2016 |
| | : |
| Zoning Hearing Board of Palmyra | : Argued: June 5, 2017 |
| Borough, Lebanon County | : |
| | : |
| Shenandoah Mobile, LLC, | : |
| Appellant | : |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE JULIA K. HEARTHWAY, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

_**OPINION NOT REPORTED**_

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                                    FILED:  June 28, 2017


Shenandoah Mobile, LLC (hereafter, Shentel) appeals from the March 29, 2016 order of the Court of Common Pleas of Lebanon County (trial court) denying its application for a use variance and multiple dimensional variances.

The underlying facts of this case are not in dispute.  On May 17, 2014, Shentel filed an application with the Zoning Hearing Board of Palmyra Borough (Board), Lebanon County, seeking a use variance to place a monopole wireless communication tower on property owned by the Borough of Palmyra (Borough) located at 843 West Main Street (the Property).  The Property is located in a C-2 Auto-Oriented Commercial Zoning District, which does not permit such towers, and

was acquired by the Borough as part of a road widening project adjacent to the Property. The Pennsylvania Department of Transportation (DOT) required the Borough to acquire the Property for purposes of this project. The Borough classified the Property as an uneconomic remnant and DOT approved this classification. (Findings of Fact Nos. 1-5.)

Section 10.02 of the zoning ordinance addresses the permitted uses in the C-2 Auto-Oriented Commercial Zoning District, none of which include wireless communication towers. For this reason, Shentel sought the use variance. In addition, Shentel sought multiple dimensional variances, relating to the following sections of the Borough's zoning ordinance: 10.04.A; 11.02.K(4)(e); and 15.07.[1] More specifically, section 10.04.A requires a 60-foot front yard setback for all commercial uses and/or principal nonresidential buildings or uses in this zoning district. Shentel sought a reduction in this setback to 40 feet. (Reproduced Record (R.R.) at 4.) Section 11.02.K(4) permits wireless communications towers in the Manufacturing District as a special exception use if certain conditions are met, including a setback in subsection (e) of one and one-half times the tower height from the nearest property line, street right-of-way line, easement line, and/or lease line, which equates to 180 feet. Shentel sought reductions in this setback to 42 feet; 43 feet, 5 inches; 60 feet; and 103 feet, 11 inches, respectively. *Id.* Section 15.07 requires a driveway width of 20 feet. Shentel sought a reduction in the width to 15 feet. *Id.*

After several continuances, the Board held a hearing on October 20, 2014. At this hearing, the Board permitted Shentel to orally amend its application to request additional variances from sections 13.02.A and 13.02.B, as well as section 10.04.A(3), of the zoning ordinance. (Trial court op. at 2.) Section 13.02.A states

---

[1] A copy of the Borough's zoning code was filed as a supplemental record with this Court.

2

that any accessory building or structure shall comply in all respects with the yard setback requirements for a principal building. Shentel sought similar setbacks for the concrete base/platform and antenna as it did for the tower itself. (R.R. at 114-15.) Section 13.02.B provides that no detached building or structure shall be placed closer to the front-yard setback than the principal structure. Shentel sought a variance to permit it to place cabinets in front of the tower. (R.R. at 115.) Section 10.04.A(3) states that no building in the C-2 Auto-Oriented Commercial Zoning District shall exceed two and one-half stories or 35 feet in height unless authorized as a special exception by the Board. Shentel sought to construct a 120-foot high monopole tower. (R.R. at 15-16.)

Shentel presented the testimony of Deborah Baker, its site acquisition consultant. She testified that the proposed tower would be 120 feet tall, self-supporting with no guide wires, with a gray, galvanized finish. She stated that the tower would sit on a concrete pad measuring 10 foot by 16 foot, which would also hold equipment cabinets, and be surrounded by a 50 foot by 50 foot fence. Baker noted that the lease area would be 60 foot by 60 foot, with access to the site from North Avenue. She confirmed that the deed to the Property identifies the site as an uneconomic remnant from an eminent domain proceeding. She also noted that the plan for the tower had been approved by the Federal Aviation Administration and would not require lights. Finally, she indicated that there were at least six towers closely located to the Borough and that the State Historic Preservation Office opined that the proposed tower would not have any effect on any historical resources. (Finding of Fact No. 6.)

Shentel next presented the testimony of Gary Vaughan, an expert in wireless communication and radio frequency coverage. He identified the Property as

the site that was required in order for Shentel to provide the required radio frequency coverage to the coverage objective. He also stated that the proposed tower height of 120 feet was the minimum height necessary to provide the desired radio frequency coverage. (Finding of Fact No. 7.)

Finally, Shentel presented the testimony of W. Jeffrey Nagorny, a civil engineer. He indicated that the proposed tower would be 42 feet from the northwestern property line and 40 feet, 7 inches from the right-of-way on Lingle Ave. He testified that the nearest lease line was 27 feet and the nearest easement line was 29 feet, 3 inches. He noted that the tower is designed for use by Shentel and three other collocating carriers. Nagorny stated that the tower would be designed to fall within a radius of 40 feet from the proposed location in the event of a catastrophic collapse. (Finding of Fact No. 8.)

The Borough presented the testimony of Roger Powl, its Borough Manager. Powl confirmed that the Borough was required by DOT to acquire the Property for a road widening project by filing a declaration of taking. He stated that the Borough did not take part in planning the road widening project and that DOT approved the classification of the property as an uneconomic remnant. He noted that the Borough would receive $12,000.00 annually from Shentel for use of the Property, along with an escalatory clause and additional payments for collocations. (Finding of Fact No. 9.)

Finally, Charles Emerick, Director of Community Development for Derry Township, testified in opposition to Shentel's application. He stated that the uses permitted in the Auto-Oriented District must be non-objectionable in terms of emission or visual impact, and not have an adverse effect on adjacent areas. He stated that wireless communication towers are allowed as a conditional use in a

4

Manufacturing District. Emerick stressed that section 11 of the zoning ordinance sought to protect residential areas and land uses from potential adverse impacts of towers. He noted that the zoning ordinance requires a setback of one and one-half times the tower height to dwellings and that the requested variance for height relief was approximately 243 percent. (Finding of Fact No. 10.)

The Board held a second and final hearing on November 17, 2014, for the sole purpose of rendering an oral decision with respect to Shentel's variance application. By a vote of two to one, the Board denied the application. However, the Board failed to issue a written decision within the required 45 days under section 908(9) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10908(9). As a result of the Board's failure to issue a written decision, Shentel posted a notice of deemed approval on the Property and published a copy of said notice in the local newspaper, the Lebanon Daily News, for two consecutive weeks. Derry Township (Township) thereafter filed an appeal of the notice of deemed approval with the trial court. Shentel timely intervened in this appeal. (Finding of Fact No. 11; Trial court op. at 2.)

By order dated March 29, 2016, the trial court denied Shentel's variance application. In an adjudication filed simultaneously with this order, the trial court rendered the findings of fact discussed above. The trial court addressed the variance requirements set forth in section 910.2(a) of the MPC.[2] While the trial court noted

_____

[2] Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10910.2(a). Section 910.2(a) provides as follows:

> The board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant. The board may by rule prescribe the form of application and may require preliminary application to the zoning officer. The

**(Footnote continued on next page…)**

5

that there was substantial testimony regarding the unique nature of the property and the difficulties the Borough faces in finding a conforming use for the Property in the

**(continued…)**

board may grant a variance, provided that all of the following findings are made where relevant in a given case:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

C-2 Auto-Oriented Commercial Zoning District, it concluded that Shentel failed to establish an unnecessary hardship created by the Property's unique physical circumstances.

The trial court noted that the unique hardship criterion is not satisfied where, as here, an asserted hardship merely reflects a landowner's desire to increase profitability or maximize development potential. The trial court explained that:

> The asserted hardship is being caused by Palmyra Borough's desire to put this piece of property, classified as an uneconomic remnant, to a profitable use for the Borough. Shentel has proven nothing more than the plain fact that the driving force behind this variance application is pure economic gain. As such, this financial hardship that will arise if the variance is not granted is not supported by the law.

(Trial court op. at 9-10; Conclusion of Law No. 1(b).) The trial court also concluded that Shentel failed to show that there is no possibility that the Property can be developed in strict conformity with the provisions of the zoning ordinance and that a variance is necessary to enable the reasonable use of the same.

Additionally, the trial court concluded that the variance, if authorized, will alter the essential character of the neighborhood. In this regard, the trial court stated that wireless communication towers are only permitted in the Manufacturing District and, even then, only by special exception. The trial court stressed that section 11.02.K(4)(b) of the zoning ordinance reflects a clear intent to protect residential areas and encourage the location of towers in nonresidential areas, where the adverse impact, including visibility, is minimal. However, the trial court noted that the proposed tower is surrounded by residential properties and the application

7

seeks 243 percent relief with respect to the 35-foot height requirement in a C-2 Auto-Oriented Commercial Zoning District.[3]

On appeal to this Court,[4] Shentel argues that the trial court erred in denying its variance application where the record shows that it demonstrated compliance with each of the requisite standards for the granting of the use and dimensional variances under section 910.2(a) of the MPC. We disagree.

As noted above, section 910.2(a) requires an applicant for a variance to establish the following:

> (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.
>
> (2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the

---

[3] The trial court did conclude that the variance, if authorized, would be the minimum variance that will afford relief to Shentel. (Trial court op. at 12; Conclusion of Law No. 5.)

[4] This Court's review, where the trial court takes no additional evidence, but makes its own findings based on the record before the zoning hearing board, is limited to determining whether the trial court abused its discretion or committed an error of law. *In re Appeal of Deemed Approved Conditional Use*, 975 A.2d 1193, 1199 (Pa. Cmwlth. 2009) (citation omitted). This Court will only find an abuse of discretion where the trial court's findings are not supported by substantial evidence. *Id.*

zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. §10910.2(a). We have previously described the burden on an applicant seeking a variance under section 910.2(a) of the MPC as a "heavy" one. *Wilson v. Plumstead Township Zoning Hearing Board*, 894 A.2d 845, 850 (Pa. Cmwlth. 2006), *aff'd*, 936 A.2d 1061 (Pa. 2007) (citation omitted). Our Pennsylvania Supreme Court has stressed that an applicant for a variance must show that unnecessary hardship will result if the variance is denied and that the proposed use will not be contrary to the public interest. *Hertzberg v. Zoning Board of Adjustment*, 721 A.2d 43, 47 (Pa. 1998).

Generally, an unnecessary hardship can be established by evidence that: (1) the physical features of the property are such that it cannot be used for a permitted purpose; (2) the property can be conformed for a permitted use only at a prohibitive expense; or (3) the property has no value for any purpose permitted by the zoning

9

ordinance. *Id.* Additionally, the reasons for granting a variance must be "substantial, serious and compelling," and the hardship "must be unique or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on an entire district." *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 640 (Pa. 1983) (citations omitted). "Moreover, mere evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance." *Id.* Importantly, "[i]n evaluating hardship the use of adjacent and surrounding land is unquestionably relevant." *Id.*

However, in *Hertzberg*, our Supreme Court discussed a lesser burden with respect to dimensional variances, as opposed to use variances, stating as follows:

> [W]e now hold that in determining whether unnecessary hardship has been established, courts should examine whether the variance sought is use or dimensional. To justify the grant of a dimensional variance, courts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood. To hold otherwise would prohibit the rehabilitation of neighborhoods by precluding an applicant who wishes to renovate a building in a blighted area from obtaining the necessary variances.

721 A.2d at 50. Nevertheless, this Court has explained that, while the standard requiring an applicant to show that unnecessary hardship will result if a variance is denied and that the proposed use will not be contrary to the public interest remains intact, "[i]t is only the stringency of the standard in proving an unnecessary hardship that varies, depending on whether a use or dimensional variance is sought." *Society Hill Civic Association v. Philadelphia Zoning Board of Adjustment*, 42 A.3d 1178, 1186 (Pa. Cmwlth. 2012). In other words, *Hertzberg* merely "relaxed" the degree of

hardship that an applicant was required to show. *Township of Northampton v. Zoning Hearing Board*, 969 A.2d 24, 27 (Pa. Cmwlth. 2009). In *Society Hill Civic Association*, we further held that "[w]here no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth in *Hertzberg*." 42 A.3d at 1187.

In the present case, the trial court properly recognized that the Property itself was "irregular in shape, quite narrow, steep sloping topography on part of the lot, and has a storm water channel." (Conclusion of Law No. 1(a).) However, the trial court also properly recognized that any asserted hardship is caused by the desire of the landowner, the Borough, to utilize the Property for a profitable use. Indeed, the Property was acquired by the Borough, albeit at the mandate of DOT, as part of a road-widening project, and has been identified as an uneconomic remnant on the deed. In other words, the Borough itself had determined that the Property would have no economic value when it was created. The only hardship here is the Borough's desire to create profit from a piece of land that the Borough knew would not be profitable when it was obtained. In similar circumstances, we have reversed the grant of a variance to a developer who subdivided land, thereby creating a residual lot that did not conform to the applicable zoning ordinance, and who thereafter sought a variance in light of this nonconformity. *See Carman v. Zoning Board of Adjustment*, 638 A.2d 365 (Pa. Cmwlth. 1994).

Moreover, as the trial court concluded, the record here lacks evidence that, due to the physical circumstances of the Property, there is no possibility that the Property can be developed in strict conformity with the provisions of the zoning

11

ordinance.  In fact, the only evidence in this regard is the testimony of Powl, the Borough Manager, who merely answered in the affirmative when asked if he believed the Property could not be developed in strict conformity with the zoning ordinance and if he believed that the tower was necessary to enable some use of the Property.  As the trial court recognized, this testimony was "superficial at best." (Conclusion of Law No. 2.)

Furthermore, and perhaps more importantly, the zoning ordinance in effect at the time of Shentel's application expressed a clear desire to locate wireless communications towers away from residential areas and to minimize any potential impact on the essential character of the neighborhood.[5]  Indeed, section 11.02.K(4)(b) of the zoning ordinance provides, in pertinent part, the following goals and objectives with respect to such towers:

> (1) Protect residential areas and land uses from potential adverse impacts of towers and antennas.
>
> (2) Encourage the location of towers in nonresidential areas.
>
> (3) Minimize the total number of towers throughout the community.
>
> . . .
>
> (5) Encourage users of towers and antennas to locate them, to the extent possible, in areas where the adverse impact on the community is minimal.

---

[5] The trial court notes that the zoning ordinance was updated in March 2015.  Shentel filed its application in May of 2014 and it is the zoning ordinance in effect at that time that controls the disposition here.

12

(6) Encourage users of towers and antennas to configure them in a way that minimizes the adverse visual impact of the towers and antennas through careful design, siting, landscape screening and innovative camouflaging techniques.

. . .

(9) Avoid potential damage to adjacent properties from tower failure through engineering and careful siting of tower structures.

Such desire for protection of nearby properties is also evident in section 11.02.K(4)(e) of the zoning ordinance, which imposes a setback requirement of one and one-half times the tower height. Additionally, the concern for minimization of the visual impact of these towers is emphasized in section 11.02.K(4)(b)(6) above, as well as sections 11.02.K(4)(h) (requiring wireless communication towers to "be painted silver or have a galvanized finish retained, in order to reduce the visual impact . . . they may be painted green up to the height of nearby trees"), 11.02.K(4)(i) (prohibiting artificial lighting, unless required by federal law), and 11.02.K(4)(j) (requiring any base fence to be surrounded by a screen and to include screen planting/vegetation).

In this case, the record indicates that the Property sits at the busy intersection of S.R. 422, which constitutes "Main Street" in the Borough, and Lingle Avenue. Powl, the Borough Manager, acknowledged that the neighborhood in question was "mostly residential," (R.R. at 94), and the trial court noted that the Property was "surrounded by residential properties, which is in direct contravention to the intended placement of wireless communication towers in [the] Borough . . . ." (Trial court op. at 12; Conclusion of Law No. 4.) Further, as the trial court noted, there is a height limitation in the C-2 Auto-Oriented Commercial Zoning District of 35 feet and Shentel, by seeking a variance to erect a 120-foot tower, asks for 243

13

percent relief from this height limitation. We agree with the trial court that such request was "so far beyond what is permitted in the district that the height of the tower would significantly alter the essential character of the neighborhood if it were authorized." *Id.*

Accordingly, the order of the trial court is affirmed.


_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Township of Derry           :
                                  :
          v.                 :    No. 663 C.D. 2016
                                  :
Zoning Hearing Board of Palmyra  :
Borough, Lebanon County      :
                                  :
Shenandoah Mobile, LLC,     :
             Appellant     :

## ***ORDER***

AND NOW, this 28th day of June, 2017, the order of the Court of Common Pleas of Lebanon County, dated March 29, 2016, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge