IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Philadelphia Community | : | |
| Development Coalition, Inc. | : | |
| | : | No. 299 C.D. 2022 |
| v. | : | |
| | : | Submitted: April 21, 2023 |
| Bruce Fassett, trustee for | : | |
| Sierra Fassett, | : | |
| Appellant | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE ELLEN CEISLER, Judge
                    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE McCULLOUGH                                      FILED: February 26, 2024

This appeal involves the remediation of blighted property in the City of Philadelphia (City) pursuant to the Abandoned and Blighted Property Conservatorship Act,[1] commonly known as Act 135 (Act 135). Appellant Bruce Fassett, trustee for Sierra Fassett (Fassett), appeals from three orders entered by the Philadelphia County Court of Common Pleas (trial court) on March 25, 2022.[2] Also before the Court is Appellee Philadelphia Community Development Coalition, Inc.'s (PCDC) Motion to Quash Appeal (Motion to Quash). After careful review, we grant PCDC's Motion and quash this appeal, but on grounds different than those asserted by PCDC.

## I.      FACTS AND PROCEDURAL HISTORY

### A.      Act 135

We have described proceedings brought under Act 135 as follows:

---

[1] Act of November 26, 2008, P.L. 1672, *as amended*, 68 P.S. §§ 1101-1111.

[2] The trial court disposed of the three motions together in a single order filed on March 25, 2022. (Original Record (O.R.) Document (Doc.) No. 63.) The trial court then filed three additional orders on March 25 and 28, 2022, that disposed of the same three motions. (O.R. at Doc. Nos. 64-66.)

Act 135 authorizes a court to appoint a conservator to rehabilitate a deteriorating building, thereby incurring debt that ultimately may be the owner's responsibility. The conservator is responsible for bringing buildings into municipal code compliance when owners fail to do so.

Section 2 of Act 135, 68 P.S. § 1102, authorizes the filing of a Petition for the Appointment of a Conservator with the court of common pleas by certain named interested parties who seek the appointment of a conservator to take possession of the property, undertake its rehabilitation[,] and, as appropriate, ultimately sell the property unless reclaimed by the owner(s).

*In re Conservatorship Proceeding In Rem by Germantown Conservancy*, 995 A.2d 451, 453 (Pa. Cmwlth. 2010).[3]

---

[3] Section 2 of Act 135 identifies its purpose and objectives:

(1) Pennsylvania's older communities are important to the Commonwealth's economic health by providing a focal point for businesses and services and to this Commonwealth's quality of life with its rich history and diverse communities. However, many older communities suffer from blighted properties that have been abandoned by their owners.

(2) Many citizens of this Commonwealth are adversely affected by abandoned and blighted residential, commercial and industrial properties, including those citizens who live in proximity to such substandard buildings, as well as those who own property in the vicinity of such buildings.

(3) Substandard, deteriorating and abandoned residential, commercial and industrial structures are a public safety threat and nuisance and their blighting effect diminishes property values in the communities in which these properties are located.

(4) If these buildings are not rehabilitated, they are likely to remain abandoned and further deteriorate, resulting in increased costs to the Commonwealth, municipality and taxpayers to secure and ultimately demolish them.

(5) Providing a mechanism to transform abandoned and blighted buildings into productive reuse is an opportunity for communities to

**(Footnote continued on next page…)**

## B.    Proceedings Below

On December 7, 2018, PCDC filed a Petition for the Appointment of a Conservator (Conservator Petition) pursuant to Section 4(a) of Act 135, 68 P.S. § 1104(a) (Reproduced Record (R.R.) at 0018a.)  The Conservator Petition concerned the real property located at 5105 Overbrook Avenue, Philadelphia, Pennsylvania (Property).  At a hearing on May 15, 2019, Fassett (1) stipulated on the record that the Property was "both abandoned and blighted under [Act 135] and that conditions exist for the appointment of a conservator," and (2) elected "conditional relief" under Section 5(f) of Act 135, 68 P.S. § 1105(f).[4]  (Notes of Testimony (N.T.), May 15, 2019,

---

> modernize, revitalize and grow, and to improve the quality of life for neighbors who are already there.
>
> (6) If the owner of a residential, commercial or industrial building fails to maintain the property in accordance with applicable municipal codes or standards of public welfare or safety, it is in the best interest of the Commonwealth, the municipality and the community for the court, pursuant to the provisions of this act, to appoint a conservator to make the necessary improvements before the building deteriorates further and necessitates demolition, resulting in the removal of the building from the housing supply or prohibiting future productive economic use.

68 P.S. § 1102.

[4] Section 5(f) of Act 135 permits the owner of a property to remedy conditions that otherwise would necessitate the appointment of a conservator.  It provides, in pertinent part, as follows:

> **(f) Conditional relief.--**
>
> (1) If the [trial] court finds after a hearing that the conditions for conservatorship . . . have been established, but the owner represents that the conditions, violations or nuisance or emergency condition will be abated in a reasonable period, the [trial] court may allow the owner to proceed to remedy the conditions.
>
> (2) If the conditions set forth in paragraph (1) have been satisfied, the [trial] court shall enter an order providing that, in the event that the violations or nuisance or emergency conditions are not abated by the owner by a specific date or that other specified remedial

**(Footnote continued on next page…)**

3

at 12; R.R. at 0597a.) Fassett further agreed that if he could not remediate certain blighted conditions on the Property, including the roof, doors, windows, front porch, and rubbish inside the house, he would consent to PCDC's appointment as conservator. *Id.* at 13; R.R. at 0598a.

On August 6, 2019, on PCDC's request, the trial court conducted a status hearing, after which it entered an order finding that, "upon agreement of the parties, . . . [Fassett] is incapable of proceeding under the prior [c]onditional [r]elief agreement" and that "[PCDC] should be appointed as [c]onservator." (R.R. at 0053a.) The trial court accordingly appointed PCDC as conservator of the Property and granted it all rights and duties under Act 135 together with full access to, and possession of, the Property. *Id.* On October 1, 2019, PCDC filed a Motion for Approval of Final Plan for Abatement (Final Plan), in which it detailed, and included photographs of, the deplorable conditions of the Property, listed the work it had performed since being appointed as conservator, proposed additional work to be completed prior to final termination of the conservatorship, and itemized the estimated costs of the conservatorship. (O.R. Doc. No. 18.)

After a hearing on October 11, 2019, the trial court approved PCDC's Final Plan with certain modifications regarding the joists in the house. (O.R. Doc. No. 20.)[5] On December 11, 2019, again after a hearing, the trial court ordered Fassett to

activities have not occurred by a specific date or dates, an order granting the relief requested in the petition shall be entered.

68 P.S. § 1105(f).

[5] Specifically, the trial court approved the work already completed by PCDC and the following additional work:

    a) [d]emolition and stabilization of [the] existing front porch, at an estimated cost of $9,250.00;

**(Footnote continued on next page…)**

4

complete the following work within three weeks: (1) remove from the Property all remaining items of personal property, including any vehicles; and (2) bring duly licensed and insured contractors to inspect the Property and provide PCDC with formal written quotes for the work that PCDC was ordered to complete. (O.R. Doc. No. 22, ¶¶ 1-2.)

In a January 7, 2020 Status Report on the Implementation of Its Final Plan, PCDC advised the trial court that Fassett had not complied with the trial court's December 11, 2019 order and that, upon completion of the court-approved remediation work, PCDC would file a motion to market the Property for sale. (O.R. Doc. No. 24.) On February 26, 2020, PCDC filed a Motion to Amend Final Plan and List Property for Sale (Motion to Amend), in which it noted additional structural issues that were identified during interior demolition and debris removal. (O.R. Doc. No. 25.) PCDC submitted a Supplemental Structural Evaluation Report from Bustamante Engineers detailing proposed additional remediation work and itemizing the proposed additional costs. *Id.* ¶ 28, Ex. "F." PCDC also requested, pursuant to Section 9(b) of Act 135, 68 P.S. § 1109(b),[6] to amend the Final Plan to include making the Property structurally

---

b)  [i]nterior demolition/debris removal, at an estimated cost of $8,000.00;

c)  [r]eplacement of existing roof, at an estimated cost of $9,000.00;

d)  [s]elective replacement and/or securing of doors and windows, at an estimated cost of $5,000.00;

e)  [s]elective masonry repairs, at an estimated cost of $1,200.00; and[]

f)  [g]eneral maintenance of exterior grounds, at an estimated cost of $1,650.00.

(O.R. Doc. No. 18, ¶ 7.)

[6] Section 9(b) of Act 135 authorizes the sale of property held in conservatorship under certain specified conditions:

**(Footnote continued on next page…)**

sound so that it could be sold to a third party for productive use. *Id.* ¶ 30. PCDC indicated that it had been approached by several developers that were interested in purchasing the Property "as is," subject to certain structural work to the front wall of the home. *Id.* ¶ 32.

After a hearing on October 7, 2020, the trial court denied PCDC's Motion to Amend, vacated PCDC's previously approved Final Plan, and directed PCDC to submit an alternative final plan in accordance with Section 6(c) of Act 135, 68 P.S. § 1106(c).[7] (O.R. Doc. No. 29.) Thereafter, on February 19, 2021, PCDC filed a Motion

---

> **(b) Sale by conservator.--**Upon application of the conservator, the [trial] court may order the sale of the property if the [trial] court finds that:
>
> > (1) Notice and an opportunity to provide comment to the court was given to each record owner of the property and each lienholder.
> >
> > (2) The conservator has been in control of the building for more than three months and the owner has not successfully petitioned to terminate the conservatorship . . . .
> >
> > (3) The terms and conditions of the sale are acceptable to the [trial] court, and the buyer has a reasonable likelihood of maintaining the property.

68 P.S. § 1109(b).

[7] Section 6 of Act 135 defines the powers and duties of a conservator. 68 P.S. § 1106. Section 6(c) governs the conservator's final plan for abatement of the conditions on property held in conservatorship:

> **(c) Hearing on conservator's final plan for abatement.--**
>
> > (1) At the time the court appoints a conservator, the conservator may present and the court may approve the final plan for abatement. If no plan is presented at that hearing, a hearing date on the conservator's final plan for abatement shall be set within 120 days of the appointment.
> >
> > (2) Thirty days prior to the date of the hearing, the conservator shall submit the plan to the court and to all parties to the action.

**(Footnote continued on next page…)**

to Approve a New Final Plan, in which it summarized the work completed and the municipal liens, taxes, and utility bills it had paid. *Id.* ¶¶ 49-52. PCDC further alleged that "additional work should not be performed by PCDC—or any other party—without undertaking significant structural repairs that can only be justifiable when made in conjunction with a full renovation." *Id.* ¶ 54. PCDC outlined three alternative final plan options: (1) sell the Property in its current condition; (2) improve the Property with additional structural and restoration work at a cost of approximately $103,000.00; or (3) terminate the conservatorship conditioned on Fassett obtaining the means to finish the renovations and pay the costs of the conservatorship. *Id.* ¶¶ 56-80.

The trial court held a hearing on the Motion to Approve New Final Plan on April 1, 2021, at which PCDC requested that the trial court approve the first alternative plan to sell the Property in its current condition because it believed that it was the only financially viable alternative of the three. (N.T., April 1, 2021, at 18-26,

> (3) The plan shall include a cost estimate, a financing plan and either a description of the work to be done for the rehabilitation of the building or, if rehabilitation is not feasible, a proposal for the closing, sealing or demolition of the building.
>
> (4) The plan shall conform with all existing municipal codes, duly adopted plans for the area and historic preservation requirements.
>
> (5) At the time of the hearing, all parties shall be allowed to comment on the plan, and the court shall take all comments into consideration when assessing the feasibility of the plan and the proposed financing. In making its assessment, the court shall give reasonable regard to the conservator's determination of the scope and necessity of work to be done for the rehabilitation or demolition of the building in approving the final plan and in approving the costs of conservatorship and sale of the property.
>
> (6) Within 15 days of the hearing, the court shall issue a decision approving the plan or requiring that the plan be amended.
>
> (7) If the court decision requires that the plan be amended, a hearing date shall be set within 60 days from the date of the decision.

68 P.S. § 1106(c).

7

72-74; R.R. at 0640a-42a, 0653a-54a.) On April 6, 2021, the trial court granted PCDC's Motion to Approve New Final Plan and directed that PCDC implement its second alternative plan (New Final Plan) to complete additional remediation and restoration work. (O.R. Doc. No. 35.) PCDC moved for reconsideration, which was denied on April 26, 2021. (O.R. Doc. No. 37.)

On December 3, 2021, PCDC filed a "Motion to Confirm Listing Contract for the Sale of [the Property]" (Listing Motion). (R.R. at 0035a.) Therein, PCDC alleged that it had substantially completed the court-ordered work outlined in the New Final Plan, including removal of the exterior columns, installation of a new roof, and completion of structural repairs to the masonry walls. (Listing Motion, ¶¶ 56-57; R.R. at 0047a-48a.) PCDC included its total costs of conservatorship, including construction, liens, and fees, totaling $275,361.98. *Id.* ¶¶ 60-62; R.R. at 0048a-49a. PCDC agreed to waive its statutorily-authorized conservator fee and to reduce legal fees by approximately $23,000.00. *Id.* PCDC also alleged, via printout from the City's Department of Revenue, that the only outstanding municipal obligation for the Property was payment of 2022 taxes in an amount of $1,836.54. *Id.* PCDC therefore requested that the trial court approve an initial active listing of the Property for $199,900.00, even though PCDC expected that it would receive multiple bids above asking price. *Id.* ¶¶ 67; R.R. at 0049a-50a.

On January 20, 2022, Fassett filed a "Motion [ ] to Terminate Conservatorship of [PCDC] and to Sell Property" (Termination Motion), which the trial court did not immediately decide. (R.R. at 0143a.) After a hearing, the trial court granted the Listing Motion by order filed on January 26, 2022 (Listing Order). (O.R. Doc. No. 55.) In the Listing Order, the trial court approved a listing contract with Compass Pennsylvania, LLC and an initial listing price of $199,900.00. *Id.* It further

8

directed PCDC to actively market the Property for at least 30 days, after which PCDC could file a motion to approve a sale in accordance with Section 6 of Act 135. *Id.* On February 3, 2022, Fassett filed a Motion for Reconsideration of the Listing Order, in which he alleged that granting the Listing Motion was inappropriate while his Termination Motion was pending. He also argued that the Property was in worse condition after PCDC completed its remediation work than it was at the beginning of the conservatorship (Reconsideration Motion). (R.R. at 0181a-84a.)

PCDC filed its Fee & Cost Report on March 1, 2022. (R.R. at 0196a.) On March 4, 2022, pursuant to Section 9 of Act 135, PCDC filed a "Motion to Approve Agreement of Sale and Authorize Conservator to Transfer [Property]" (Sale Motion). (R.R. at 0213a.) Therein, PCDC indicated that it had listed the Property in accordance with the Listing Order and had received multiple offers ranging from $152,000.00 to $278,000.00. (Sale Motion, ¶¶ 3, 8; R.R. at 0214a.) PCDC further indicated that the highest offer did not include a financing contingency and waived all inspections. *Id.* ¶ 11; R.R. at 0216a.

After hearing on March 25, 2022, the trial court entered an order (1) granting PCDC's Sale Motion (Sale Order); (2) denying Fassett's Termination Motion (Termination Order); and (3) denying Fassett's Reconsideration Motion (Reconsideration Order). (O.R. Doc. No. 63.) The trial court further scheduled a status hearing for May 17, 2022, and directed PCDC to file a final fee and cost petition in advance of the hearing. *Id.* By separate order also entered on March 25, 2022, the trial court further explained its Sale Order:

> [T]he [trial c]ourt finding that work approved by the [trial c]ourt[ ] . . . has been completed by [PCDC], and after the record owner of the [ ] Property and each lienholder has been provided with an opportunity to comment on the proposed sale, and with no party having presented a viable proposal to

9

terminate this conservatorship in accordance with Section 10 of Act 135, [ ] 68 P.S. § 1110, or sought to stay the sale in accordance with [Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.)] 1732, the Court hereby ORDERS and DECREES THAT:

> a) [PCDC] has been in control of the building for more than three months and the owner has not successfully petitioned to terminate the conservatorship under [S]ection 10 of Act 135, [ ] 68 P.S. [§] 1110[;]
>
> b) The terms and conditions of the Agreement of Sale dated February 1, 2022 and fully executed on March 3, 2022, which is attached to [PCDC's] [Sale Motion] as Exhibit "C," are acceptable to the [trial c]ourt;
>
> c) The proposed [b]uyers have a reasonable likelihood of maintaining the [ ] Property;
>
> d) [PCDC], in accordance with Section 9(c) of Act 135, [ ] 68 P.S. § 1109(c), is hereby authorized to sell the building free and clear of all liens, claims and encumbrances and shall execute all documents necessary to transfer the [ ] Property to the proposed [b]uyers . . . ;
>
> e) All proceeds from the sale, after payment of all taxes, closing costs and broker's commissions shall be placed into the [Income on Lawyer Trust Account (IOLTA)] of Orphanides & Toner, LLP, pending review and approval of a distribution schedule submitted by [PCDC] pursuant to Section 10 of Act 135, [ ] 68 P.S. [§] 1110.

(O.R. Doc. No. 64.)[8]

Fassett filed a Notice of Appeal on March 29, 2022, in which he purported to appeal from the trial court's orders denying his Termination and Reconsideration Motions and granting PCDC's Sale Motion. (O.R. Doc. No. 67.) Fassett did not purport to appeal directly from the trial court's Listing Order and did not seek a stay of

---

[8] The trial court also entered separate orders denying Fassett's Termination and Reconsideration Motions. (O.R. Doc. Nos. 65, 66.)

the sale of the Property. The trial court ordered Fassett to file a Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal (Concise Statement), which he did on April 18, 2022. (O.R. Doc. Nos. 68, 70.)

In the interim, on April 8, 2022, PCDC filed a Petition for Appeal Bond Pursuant to Pa.R.A.P. 1737 (Bond Petition). (R.R. at 0221a.) In the Bond Petition, PCDC noted that it had self-financed all costs of the conservatorship and that the trial court had approved all work that it had completed to make the Property salable. (Bond Petition, ¶¶ 2, 6; R.R. at 0221a-22a.) Although PCDC acknowledged that the posting of financial security is not mandatory in appeals from non-monetary judgments where a stay is not sought by the appellant, it nevertheless argued that, pursuant to Pa.R.A.P. 1737(a)(1),[9] the trial court had discretion to require security based upon "unique facts and circumstances." *Id.* ¶¶ 13-14; R.R. at 0223a. PCDC further advised that, although Fassett had not sought a stay of the sale of the Property pursuant to Pa.R.A.P. 1731, the title underwriters for the sale would not issue a title insurance policy during the pendency of this appeal. *Id.* ¶ 29; R.R. at 0226a. PCDC requested the imposition of an appeal bond in the amount of $415,153.99, which is an amount equal to 120% of PCDC's combined conservatorship costs, conservator's fee, and anticipated legal fees on appeal. (R.R. at 0227a.)

---

[9] Pa.R.A.P. 1737 is titled "Modification of Terms of *Supersedeas*." Rule 1737(a)(1) provides:

> (a) The trial court or the appellate court, may at any time, upon application of any party and after notice and opportunity for hearing:
>
> (1) require security of a party otherwise exempt from the requirement of filing security upon cause shown[.]

Pa.R.A.P. 1737(a)(1).

11

The trial court granted the Bond Petition on May 24, 2022, and required Fassett to post bond in the amount of $415,153.99 within 10 days (Bond Order). (O.R. Doc. No. 78.) It is undisputed that Fassett did not post the required security or appeal the trial court's Bond Order.

## II.    ISSUES ON APPEAL

There are three issues presented in this appeal: (1) whether Fassett's appeal should be quashed due to his failure to comply with the Bond Order; (2) whether the trial court's Listing Order and, relatedly, Reconsideration Order are reviewable on appeal; and (3) whether the trial court erred or abused its discretion in granting the Sale Motion. Importantly, the following matters *are not* at issue in this appeal: (1) the appointment of PCDC as conservator; (2) the fees and costs associated with PCDC's conservatorship; (3) the trial court's Termination Order;[10] or (4) the validity or scope of PCDC's New Final Plan.

## III.    DISCUSSION[11]

### A.    The Bond Order

We first address PCDC's argument that Fassett's failure to comply with the trial court's Bond Order requires the quashing of this appeal. Fassett argues in response that the trial court's Bond Order was not authorized by the Rules of Appellate

---

[10] Although Fassett purported to appeal from the trial court's Termination Order and included in his Concise Statement certain issues related to the Termination Motion, *see* O.R. Doc. No. 70, he has not raised or briefed any issues in this court challenging the Termination Order. We therefore consider that issue to be abandoned and waived. *See Philadelphia Community Development Coalition, Inc. v. Philadelphia Redevelopment Authority*, 298 A.3d 172, 174 n.1 (Pa. Cmwlth. 2023).

[11] Our review determines whether the trial court abused its discretion or committed an error of law necessary to the outcome of the case. *Germantown Conservancy, Inc.*, 995 A.2d at 459 n.6. The interpretation of a statute is a question of law over which our scope of review is plenary and standard of review is *de novo*. *Franks v. State Farm Mutual Automobile Insurance Co.*, 292 A.3d 866, 871 n.9 (Pa. 2023).

Procedure and that quashing the appeal on this ground would be contrary to the Pennsylvania Supreme Court's decision in *PPM Atlantic Renewable v. Fayette County Zoning Hearing Board*, 81 A.3d 896 (Pa. 2013).

Preliminarily, we emphasize that Fassett did not attempt to appeal the Bond Order and did not amend his Concise Statement to raise any issues related to it. Any arguments Fassett makes regarding the Bond Order's validity or amount therefore are technically not before us. Nevertheless, because PCDC seeks to quash this appeal on the ground that Fassett did not comply with the Bond Order, we address, to the extent necessary, its validity and enforceability.

We have recognized that, in certain limited circumstances, an appellant's failure to post an appeal bond may justify quashing the appeal. *See, e.g.*, *Takacs v. Indian Lake Borough, Zoning Hearing Board*, 18 A.3d 354, 360 (Pa. Cmwlth. 2011) (quashing land use appeal due to appellant's failure to post appeal bond ordered pursuant to Section 1003-A(d) of the Municipalities Planning Code (MPC)[12]). Here, PCDC sought the imposition of an appeal bond pursuant to Pa.R.A.P. 1737(a)(1), which provides as follows:

> (a) The trial court or the appellate court, may at any time, upon application of any party and after notice and opportunity for hearing:
>
> (1) require security of a party otherwise exempt from the requirement of filing security upon cause shown[.]

Pa.R.A.P. 1737(a)(1). PCDC argues that this rule generally permits a trial court to impose an appeal bond and that an appellant's failure to comply requires quashing the appeal. We disagree.

---

[12] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 101 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11003-A.

First, Rule 1737 is titled "Modification of Terms of *Supersedeas*" (emphasis in original). It is included under the subheading "Stay or Injunction in Civil Matters," which falls under Chapter 17 ("Effect of Appeals; Supersedeas and Stays"). Thus, by its very name and placement in the Rules of Appellate Procedure, Rule 1737 is intended to govern bonds imposed in association with stays or injunctions sought and ordered in the trial court. It is not, on its face, a broadly applicable general rule authorizing the imposition of bonds in all, or even a broad class of, appeals where no stay or injunction has been entered.

Second, Rule 1737(a) authorizes the imposition of security only against a party who is "otherwise exempt from the requirement of filing security . . . ." Pa.R.A.P. 1737(a). Rule 1736, which governs "Exemption from Security," provides that certain persons and entities generally are exempt from posting security, including, *inter alia*, the Commonwealth and its officers, political subdivisions and their officers, and a party acting in a representative capacity. Pa.R.A.P. 1736(a)(1)-(5). Rule 1736(b) further provides that, unless otherwise indicated elsewhere, the taking of an appeal by any party listed in subsection (a) operates as an automatic supersedeas in favor of that party. Pa.R.A.P. 1736(b).

Thus, and contrary to PCDC's argument, Rule 1737 did not authorize the imposition of an appeal bond in this case. It is undisputed that Fassett did not seek a stay of the trial court's Sale Order and has not sought a stay in this Court. Thus, Chapter 17 of the Rules of Appellate Procedure generally does not apply to Fassett's appeal and do not authorize a bond requirement. Further, although Pa.R.A.P. 1701(a) has been recognized to provide a trial court with jurisdiction to issue a stay and require associated posting of security after an appeal has been filed, our Supreme Court has

14

cautioned that Rule 1701(a) does not itself *authorize* the imposition of a bond without other statutory or rule-based authorization. In *PPM*, the Supreme Court opined:

> To the extent the dissent may be understood to suggest that Rule 1701(b)(1) itself supplies common pleas courts with broad powers to require the posting of appeal bonds, moreover, such a concept is highly suspect. Rule 1701 primarily divests such tribunals of their ability to proceed further in a case, and subsection (b)(1) makes an exception for certain matters that have been described as "housekeeping" in nature . . . .
>
> Appeal bonds are materially different: they are in derogation of the right to appeal . . . . That right is constitutional in its dimension. . . . In this respect, imposition of a bond is in contrast to the more conventional scenario where security is posted in exchange for a stay or supersedeas. Under the latter procedure, made expressly available per our appellate rules, see Pa.R.A.P. 1731, 1733, a failure to post security has no effect on the right to appeal.
>
> . . . .
>
> [T]o the extent this case involves any question regarding the scope of powers purportedly subsisting under appellate rule 1701(b)(1), we are not receptive to the position that that rule alone gives trial courts power or discretion to require the posting of bond as a precondition to an appeal where no other, external source of authorization for such a bond exists.

*Id.* at 901-02.

We thus conclude that, because PCDC has not identified any statutory or rule-based authority pursuant to which the trial court could impose an appeal bond, we will not quash Fassett's appeal on the ground that he did not comply with the Bond Order.

### B. <u>Appealability of the Reconsideration and Listing Order</u>

Next, we consider whether Fassett's appeal from the Reconsideration Order is proper. The parties do not dispute, and Pennsylvania courts have long held,

15

that orders denying reconsideration are not reviewable on appeal. *In re: Merrick's Estate*, 247 A.2d 786, 787 (Pa. 1968); *Chaney v. Fairmount Park Real Estate Corp.*, 155 A.3d 648, 652 (Pa. Cmwlth. 2016); *Thorn v. Newman*, 538 A.2d 105, 108 (Pa. Cmwlth. 1988). Nevertheless, Fassett argues that the Listing Order may be reviewed on appeal even if the Reconsideration Order may not. We disagree.

First, Fassett did not file an appeal from the Listing Order within the 30-day appeal period, *see* Pa.R.A.P. 903(a), and, because the trial court did not expressly grant reconsideration during that period, the appeal period was not tolled or stayed. *See* Pa.R.A.P. 1701(b)(3); *Monsour Medical Center v. Department of Public Welfare*, 533 A.2d 1114, 1115-16 (Pa. Cmwlth. 1987). Second, the parties do not dispute, and we agree, that the Sale Order is not a final order pursuant to Pa.R.A.P. 341. Thus, all previously entered interlocutory orders have not been rendered reviewable by Fassett's appeal from the Sale Order. *See In re: Bridgeport Fire Litigation*, 8 A.3d 1270, 1278 (Pa. Super. 2010) (once an appeal is filed from a final order, all prior interlocutory orders become reviewable) (quotations and citation omitted). Accordingly, because Fassett did not appeal directly from the Listing Order and this appeal does not render that order reviewable, we have no jurisdiction to consider it.

### C.   Sale Order

Finally, we consider Fassett's argument that the trial court erred and abused its discretion in entering the Sale Order. Before we address Fassett's last issue, we first must once again determine whether we have jurisdiction to consider it. Although the parties appear to agree that the Sale Order is an interlocutory order appealable as of right pursuant to Pa.R.A.P. 311(a)(2), the appealability of an order goes to the jurisdiction of the court and may be raised by the court *sua sponte*. *Shearer*

16

*v. Hafer*, 177 A.3d 850, 855-56 (Pa. 2018); *Fried v. Fried*, 501 A.2d 211, 212 (Pa. 1985).

Although this Court has held that conservatorship proceedings under Act 135 generally are included within the category of matters referenced in Rule 311(a)(2), *see Philadelphia Redevelopment Authority*, 298 A.3d at 176 n.9, the rule authorizes a direct appeal from an interlocutory order "confirming, modifying, dissolving, or refusing to confirm, modify or dissolve an attachment, custodianship, receivership, or similar matter affecting the possession or control of property . . . ." Pa. R.A.P. 311(a). The question thus is whether the Sale Order, which approved the sale of the Property, was an order "confirming, modifying, dissolving, or refusing to confirm, modify or dissolve"[13] the conservatorship. We conclude that it was not. The circumstances in which we have considered appeals from conservatorship proceedings under Act 135 have involved appeals from orders appointing or terminating, or refusing to appoint or terminate, a conservatorship. *See, e.g.*, *Germantown Conservancy*, 995 A.2d at 452 (appeal from order dismissing petition for appointment of conservator); *City of Bethlehem v. Kanofsky*, 175 A.3d 467, 468 (Pa. Cmwlth. 2017) (appeal from order appointing conservator); *Philadelphia Redevelopment Authority*, 298 A.2d at 174, 177 (appeal from an order terminating petition for appointment of conservator, construed as an order refusing to confirm a conservator). *See also Auto Shower II, Inc. v. Juszczak*, ___ A.3d ___ (Pa. Cmwlth., No. 1165 C.D. 2022, filed November 17, 2023) (considering appeal from order refusing to strike restrictive covenants placed on

---

[13] The language "affecting the possession or control of property," describes the *nature of the proceeding involved*, and *not* the nature of the order entered by the trial court. Thus, not every order entered in any proceeding that affects the possession and control of property is immediately appealable under Rule 311(a)(2). *Compare* Pa.R.A.P. 342(a)(6); *In Re: Estate of Kraskinski*, 218 A.3d 1246 (Pa. 2019) (Rule 342(a)(6) permits immediate appeals from Orphans' Court orders "determining an interest in real or personal property," which includes orders approving sale of real property out of an estate).

property in conservatorship where trial court certified order for immediate appeal pursuant to 42 Pa. C.S. § 702(b)); *Walsh v. Isabella* (Pa. Cmwlth., Nos. 1689 & 1781 C.D. 2019, filed June 23, 2021), slip op. at 1 (appeal from trial court orders denying motions to terminate conservatorship);[14] *Walsh v. Isabella* (Pa. Cmwlth., No. 336 C.D. 2021, filed October 1, 2021), slip op. at 1-2 (granting PCDC's motion to quash appeal because trial court orders approving listing contract and price and imposing appeal bond "do not confirm, modify, dissolve, or refuse to confirm, modify, or dissolve the conservatorship"); *Philadelphia Community Development Coalition v. Isabella* (Pa. Cmwlth. Nos. 11, 12, & 268 C.D. 2019, filed August 28, 2020) (appeals from trial court orders that included an order denying motion to terminate conservatorship).

Here, although the Termination Order presumably would qualify as an appealable order under Rule 311(a), Fassett has abandoned his appeal of that order. Fassett also stipulated to the appointment of PCDC as conservator, which appointment is not before the Court. In approving the sale of the Property, the trial court did not modify the conservatorship. Rather, it approved the sale pursuant to Section 9 of Act 135 which, because Fassett stipulated that he is incapable of remediating the Property himself, is a valid resolution under Act 135. *See* 68 P.S. §§ 1102(6), 1109(b). Although Fassett presumably could appeal from the trial court's final order and seek a stay pending appeal, he has not done so here. We simply cannot conclude that Fassett's

---

[14] This Court's unreported memorandum opinions may be cited for their persuasive value. Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

18

appeal of the Sale Order properly is before this Court pursuant to Rule 311(a)(2) or any other rule.[15]  Accordingly, we are without jurisdiction to consider it.[16]

## IV.    CONCLUSION

Because we conclude that Fassett's failure to post bond in the trial court is not fatal to his appeal, we will not quash it on that ground.  However, because we nevertheless conclude that Fassett has not appealed from any other appealable orders entered in the trial court, we are without jurisdiction to consider the issues he raises in this Court.  We accordingly grant PCDC's Motion to Quash on these alternative grounds.

_____
PATRICIA A. McCULLOUGH, Judge

---

[15] The parties do not argue, and we do not conclude, that the Sale Order is appealable as either a final order pursuant to Pa.R.A.P. 341 or a collateral order pursuant to Pa.R.A.P. 313.

[16] Although we are without jurisdiction to consider Fassett's challenge to the Sale Order, we note that Fassett's single argument on appeal is that the trial court did not require complete remediation of the Property prior to approving the sale pursuant to Section 6(c) of Act 135, 68 P.S. § 1106(c).  (Fassett Br. at 25-31.)  However, Section 6 of Act 135 governs the powers and duties of a conservator, and Section 6(c) in particular provides the requirements for a conservator's final plan of abatement.  68 P.S. § 1106(c).  Fassett did *not* attempt to appeal from any of the trial court's orders approving PCDC's Final or New Final Plans, and Section 6 therefore is immaterial to the trial court's entry of the Sale Order.  Further, Section 9(b) of Act 135 authorizes the sale of a property in conservatorship in certain limited circumstances.  *See* 68 P.S. § 1109(b).  Fassett makes no arguments on appeal that challenge in any meaningful, reviewable way any of the findings made by the trial court pursuant to Section 9(b).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia Community,      :
Development Coalition, Inc.    :
                         :   No.  299 C.D. 2022
        v.              :
                         :
Bruce Fassett, trustee for     :
Sierra Fassett,              :
             Appellant   :

## *ORDER*

AND NOW, this 26th day of February, 2024, it is ordered that the Motion to Quash Appeal filed by Appellee Philadelphia Community Development Coalition, Inc. hereby is GRANTED, for the reasons set forth in the foregoing Opinion. The instant appeal accordingly is QUASHED.

_____
PATRICIA A. McCULLOUGH, Judge